## Saxton Coal Co., et al. v. Kreutzer's Administratrix.

(Decided March 11, 1924.)

### Appeal from Whitley Circuit Court.

1. Master and Servant—Duty to Keep Mine Entry in Reasonably Safe Condition.—It was the duty of mining company to keep entries used by employes in a reasonably safe condition.

2. Master and Servant—Contributory Negligence and Assumption of Risk of Miner Working in Obviously Unsafe Mine Entry Not Defenses Under Compensation Act.—If a mine entry was obviously unsafe, it would be both contributory negligence and assumption

of risk in a servant to continue to use it, which would bar recovery at common law, but these defenses are abolished in case of injury to an employe of a company operating without the protection of the workmen's compensation act.

3. Master and Servant—Assumption of Risk and Contributory Negligence of Servant Failing to Exercise Care to Obiate Danger from Blasting no Defenses Under Compensation Act.—While it was a coal company's duty to maintain mine entry in reasonably safe condition, if blasting a pillar by a servant weakened the support adjacent to the entry and thereby loosened the adjacent stones, it became the duty of the servant to exercise correlative care to obviate that danger, and, if a failure to do so resulted in injury to him, this would be contributory negligence or an assumed risk on his part, which would bar a recovery at common law, but these defenses cannot be relied on by. a company operating without the protection of the workmen's compensation act.

4. Master and Servant—Contributory Negligence and Assumed Risk Abolished by Compensation Act.—Contributory negligence and assumption of risk have been abolished as defenses by statute in cases of injury to an employe of a coal company operating without the protection of the workmen's compensation act.

5. Master and Servant—Master Not Liable for Injuries where Danger Created by Workman Himself.—If blasting and removing coal from rooms and pillars rendered the rooms and stump unsafe, that danger was created by the workman himself, and it was his duty to guard against it, and if he failed in this and was thereby injured the mine company is not liable.

6. Master and Servant—Master Not Liable where Employe Did Not Work in Place Assigned to Him.—If mine owner discovered that place was dnagerous and forbade servant to work there longer, and assigned him a different place in the mine to work, such owner was not furnishing him the dangerous place for his work, and there was no reason for him to be there, and he cannot recover for injuries suffered there, not because of contributory negligence, but because in the absence of a duty there was no negligence on the part of the master.

7. Master and Servant—Whether Employe Disobeyed Orders Not to Work in Dangerous Place Held for Jury.—In an action for death of a servant in a mine, whether the servant disobeyed orders in working at the place where he was killed held for the jury.

8. Trial—Instruction as to Conversations with Deceased Held Erroneous.—In action for death of servant killed in mine alleged to be owned by two defendants as partners, where the court permitted the alleged partners to testify as to conversations with the deceased, in which they stated that they forbade him to work longer at the place of the injury, an instruction of the court that in the event a partnership was shown that this evidence was incompetent, otherwise either might testify in favor of the other, but his evidence was not to be considered in his own behalf, was

incorrect so far as one of the alleged partners was concerned, where he admitted that he was operating the mine, and the other alleged partner could not be held liable, unless it was shown that he was a partner of the other, so that in either event the latter would be testifying for himself as against the deceased person.

H. C. GILLIS for appellants.

R. L. POPE and H. L. BRYANT for appellee.

OPINION OF THE COURT BY JUDGE McCANDLESS—Reversing.

The Saxton Coal Company is unincorporated. At the times mentioned herein it operated a small coal mine in which more than five and fewer than fifteen men were employed, but it was without the protection of the workmen's compensation act.

John A. Kreutzer lost his life while "robbing" the mine for the company on the morning of Monday, October 23, 1916. No one was with him at the time, but shortly thereafter his lifeless, though still warm body, was found at a place where he had been working. It was face down, with a large stone lying diagonally across the back. As to whether the body was lying in the mine entry or under the stump he had been pulling is in dispute.

The administratrix of his estate filed suit against the two Daughertys alleging they were partners doing business in the name of the Saxton Coal Company, and recovered judgment against each of them for the sum of $3,000.00 for the negligent destruction of intestate's power to earn money.

On this appeal it is alleged that the pleadings are defective, that the court erred in refusing to give a peremptory instruction in defendant's favor, and also erred in the instructions given. No demurrer was filed to the petition or to the petition as amended. We have carefully examined those pleadings, and without setting out in detail the objections thereto, we have reached the conclusion that they stated a cause of action against the individual or individuals constituting that firm, whether it consisted of one or both Daughertys.

Passing to the next question: It appears that the mine was old; that the entry in use at the place of the accident had been driven several years back; that the Saxton Coal Company had only recently taken charge of the

mine and was "robbing" the rooms adjacent to the first left entry; that Kreutzer was an old, experienced miner, and together with Charlie Garner had been engaged in this work for more than ten days; that on Thursday evening before the accident they were informed that the company would have no cars the following day; that Kreutzer lived about one-half mile away and did not return on Friday or Saturday. At that time he and Garner had driven a hole through the pillar and had removed the coal from the rear thereof, leaving two pegs standing next to the entry in which there were possibly three or four tons of coal; on Friday morning Garner learned that he could secure cars and he and another laborer went in and worked at this place, reducing the pegs to a small quantity of coal, but it does not appear that Kreutzer knew of this work.

A witness for plaintiff testifies that he reached the place of the injury before the stone was taken from Kreutzer's body; that the body was lying entirely within the entry, with the feet within a few inches of the track rail, and the head near the rib; that he observed the stone and also a fresh cavity in the side of the entry above the coal seam that corresponded in size with the size of the stone; that it was rolled over twice and left in the middle of the track. Admittedly the stone was left in the middle of the track and was there inspected by several persons, and by one or two of whom it was measured and who gave the measurements as five and one-half feet long, twenty-three inches wide and sixteen inches thick.

Several of the plaintiff's witnesses testify to seeing the stone and a fresh cavity in the side of the entry corresponding to it in size, and also loose stones appearing at different places along the side and roof of the entry; Garner stating that he discovered on Friday that the entry was dangerous and for this reason did not go back any more, and there is considerable evidence that blasting and long exposure to the air and gases produces disintegration of the stones along the entry ways; there being no evidence that it was scaled by the company.

On the other hand the defendants claim that the company was composed of S. Daugherty alone; that S. R. Daugherty was mine foreman but had no interest in the business. They further state that they decided on Friday to abandon the work where Kreutzer was engaged, and on that day took up the track beyond that place and would

have taken it up to the next succeeding pillar, but quit on account of an injury to a workman; that they notified Kreutzer on Saturday morning that this stump was dangerous and they would do no work on it, and directed him to next work at a nearer pillar on the opposite side of the entry. These directions are narrated in different forms by the two Daughertys and four other witnesses who claim to have heard them, it being alleged that one of the conversations occurred at S. R. Daugherty's house and the other on the road to Jellico where Kreutzer and the others went on Saturday morning.

S. R. Daugherty and the same witnesses testify as to finding the body Monday morning. They say it was entirely under the stump and that there was a cavity in the stump over the rock, corresponding in size with that of the fallen stone which was lying on the body, and as to the cavity they are corroborated by some other witnesses. None of them measured the stone or is able to give anything like an accurate description of its size. It is admitted by them that the vein of coal was only twenty-four or twenty-five inches in thickness, and it is claimed that two of them in this cramped space rolled the stone from off the body and into the entry, a remarkable feat of strength considering its width and weight. S. R. Daugherty states that he rolled it no further, but admits that some of the boys rolled it to the center of the track. They deny that there was any fresh cavity in the entry from which the rock could have fallen. They also deny that the entry was in bad condition and state that deceased's pick and overall jacket were lying at the new pillar at which he was directed to work. No one claims to have seen the deceased the morning of the injury, but it is admitted that there was a car half filled with coal at the stump where he was at work and the driver of the car has never testified.

It was the duty of the defendant company to keep the entry used by the deceased in the execution of his work in a reasonably safe condition. If it was obviously unsafe it would be both contributory negligence and assumption of risk in deceased to continue to use it, and at common law would have precluded a recovery. Again while it was the company's duty to so maintain the entry, if blasting the pillar weakened the support and thereby loosened the adjacent stones it became the duty of deceased to exercise correlative care to obviate that

danger and if a failure to do so resulted in injury to him this would also be contributory negligence, or an assumed risk on his part, and consequently bar a recovery at common law, but these defenses are abolished by statute in cases of this character and cannot be relied upon here, so that if the intestate was properly at work in the entry at the place assigned to him by the company and the injury was there received by him, the company is liable.

On the other hand if blasting and removing coal from the rooms and pillars rendered the rooms and stump unsafe, that danger was created by the workman himself, and it was his duty to guard against it and if he failed in this and was thereby injured the company is not liable, hence, if the deceased was not in the entry at the time but was in the opening made by himself, and injured by a stone falling from the stump above, there can be no recovery. As suggested above, this was a disputed question of fact to be decided by the jury, if the submission was not precluded on other grounds.

A more serious question is as to whether under the facts of this case the company owed intestate any duty to maintain the entry in a reasonably safe condition at the *place* of the injury. Necessarily the mine may be dangerous at some points and safe at others and the duty of the employer is to maintain it in a safe condition at the place in use. Now although deceased had been at work for several days pulling the stump in question, if the master discovered that place was dangerous and forbade him to work there longer and assigned him a different place in the mine to work, it must be admitted that it was not furnishing him that place for his work and there was no reason for him to be there; consequently the master owed him no further duty to maintain it in a reasonabaly safe condition for his use and if in disobedience to that order he returned to work at such place and was there injured there can be no recovery; not because of contributory negligence, but because in the absence of a duty there was no negligence on the part of the master.

As several witnesses have testified without contradiction that deceased was ordered not to work at that place, should the court as a matter of law decide that he was so directed? As to this it will be noted he was an experienced, obedient laborer; that at the time he left

Thursday afternon the remaining pegs were of fairly good size and it is not shown that he knew of the work done thereon Friday by Garner and Partin and the partially filled car was found on the track where he was at work. True he may have brought that himself from the main entry a short distance away, but the driver of the car has never testified, and the witnesses who did testify that they heard the directions given are contradicted in other particulars by the physical facts, and we are not prepared to say that their evidence is conclusive of this fact.

A peremptory instruction and those on contributory negligence and assumed risk offered by defendants were properly overruled, and we cannot say that the instructions given by the court are open to criticism. However the main issue in the case was as to whether the deceased had been forbidden to work at the place at which he was injured and in disobedience of orders continued to work there. An instruction on this point was offered by appellant and refused by the court and the issue not covered by any other instruction. This was error. On another trial a proper instruction covering this issue should be given and the first instruction should be qualified to the extent of referring to it.

Over the objection of the appellee, both S. Daugherty and S. R. Daugherty were permitted to testify as to conversations with the deceased, in which they stated they forbade him to work longer at the place of the injury. The court admonished the jury that in the event a partnership was shown that this evidence was incompetent otherwise, either might testify in favor of the other, but that his evidence was not to be considered in his own behalf. This was incorrect so far as S. Daugherty was concerned as he admitted that he was operating the mine. S. R. Daugherty could not be held liable unless it was shown that he was a partner of S. Daugherty, so that in either event the latter would be testifying for himself as against a deceased person.

Wherefore judgment is reversed and cause remanded for proceedings consistent with this opinion.