## Gatliff Coal Company v. Powers' Administrator.

(Decided May 13, 1927.)

### Appeal from Whitley Circuit Court.

1. Master and Servant.—Company not operating under the Workmen's Compensation Act (Acts 1916, c. 33, as amended), at the time when employee was fatally injured, cannot rely upon any defense based on contributory negligence or assumed risk.
2. Master and Servant.—Before the administrator of an employee can recover for employee's fatal injury while in defendant's employ, where defendant was not operating under the Workmen's Compensation Act (Acts 1916, c. 33, as amended), he must establish negligence of defendant which was the proximate cause of death.
3. Master and Servant.—Whether fall of slate in a mine causing fatal injury of plaintiff's intestate occurred from coal company's negligence in using an improper method of mining or from a danger which arose in the progress of and by reason of the work which plaintiff's intestate was employed to do held for jury.
4. Trial.—Instruction in action for negligence causing death of an employee, presenting the issue of the reasonableness of an order under which the employee was supposedly working at the time

of his death, held erroneous, where there was no evidence whatever of such an order.

5. Trial.—Instructing jury to find against mining company if miner at time of fatal injury was where he had a right to be held erroneous, where the only issue on this point was whether it was reasonable for him to work on pillar in mine as he was doing, and, further, whether the injury was because of an improper mining method or a danger arising in the progress of employee's work.

TYE & SILER for appellant.

H. C. GILLIS, R. C. BROWNING and R. L. POPE for appellee.

OPINION OF THE COURT BY JUDGE DIETZMAN—Reversing.

In the fall of 1923, the appellant, Gatliff Coal Company, was engaged in robbing the pillars and stumps in "13 right entry in its No. 3" mine. Pillar and stump numbered 10 were the furthest ones in this entry from the main entry. It is conceded that the appellee's decedent, George Powers, was employed to rob this pillar and stump.

It seems to be the theory of the appellant that Powers, under his employment, was required to rob this pillar and stump from room No. 10, but we can find no support for such contention in this record. It is silent as to how he was directed to rob this pillar and stump, and, as they formed the division between rooms No. 10 and No. 9, in the absence of some proof to the contrary, it must be presumed that Powers could rob this pillar and stump from either side if it was reasonable to do so. Powers worked a while on the pillar and stump he was employed to remove and then visited his parents in Tennessee for a week or so. While he was gone, the robbing work on the other pillars and stumps in this entry went on.

Appellee's theory is that the work on pillar 10 ceased while Powers was gone, but the record is also silent as to this fact. It may have ceased and again it may not. When Powers returned to his work, George Fox, who was working in the mine, got himself transferred to the position of Powers' assistant. At first the two men worked on pillar No. 10 from the side which abutted on room No. 10. However, due to a slate fall in this room and the fact that the floor of the room was on a much lower level than that of the entry, which fact made it very hard and sometimes impossible, without the aid of a third person, for these two men to push their loaded coal cars from the

room to the entry, they decided that it would be best for one of them to work from the side of the pillar abutting on room No. 9. Pillar and stump No. 10 resembled in form the letter T. The horizontal portion of the letter represents the stump which abutted on the entry. The perpendicular portion of the letter represents the pillar. A little hallway ran from the entry into room No. 9, one wall of which was pillar No. 10. There was a little railroad track in this hall over which the coal cars were hauled. Powers and Fox desired to extend this track to the face of pillar No. 10. To do so, they decided to remove a portion of the coal which formed a part of the tip of the stump, that is, to use the illustration of the letter T, to remove a portion of the end of the horizontal line of this letter. Both Powers and Fox worked on the removal of this tip, Powers doing, perhaps, most of the work. They had scarcely removed the coal when they heard a cracking in the roof of room No. 9 from under which the coal had been removed. Fox remarked that he thought the noise came from a piece of slate, to which Powers responded: "Yes; we are both liable to get killed in a minute." About the time he uttered the last of this remark, a large piece of slate did fall from the roof from under which these two men had removed the coal. This slate fell upon Powers and killed him. Appellee, as his administrator, brought this action against the appellant for the death of Powers. On the trial, he secured a judgment for $3,500, and the coal company has appealed.

Although eligible to do so, appellant was, at the time of Powers' death, not operating under the Workmen's Compensation Act (Acts 1916, c. 33, as amended). Hence it cannot rely in this case on any defense based on contributory negligence or assumed risk. On the other hand, before the appellee can hold the appellant liable, he must establish negligence on its part which was the proximate cause of Powers' death. Gibralter Coal Mining Co. v. Nalley, 214 Ky. 431, 283 S. W. 416. Appellee's evidence tends to show that the work on the other pillars and stumps in this entry and particularly the work on pillar and stump No. 9 had gone on faster than the work on pillar and stump No. 10. He introduced expert testimony to show that under such circumstances, the tendency was for the mountain overhead to creep and to crush in the weaker supports below, thus causing what is known as a squeeze. These experts testified that assuming the work

had progressed faster on the other pillars and stumps than it did on pillar and stump No. 10, the fall of the slate which killed Powers could reasonably be attributed to the fact that the coal company had suffered the robbery to be done in this fashion and that such a method was an improper and dangerous one. These experts did not say that this was what caused the slate to fall, only that the fall could reasonably be attributed to this method of mining. On the other hand, Fox testified that when he and Powers went into room No. 9, they tested the roof and it sounded all right. Although the work may have progressed further on the pillars and stumps, than those numbered 10, the roof in room No. 9 when tested sounded all right, and there was no visible evidence of a creep or squeeze. The slate did not fall from the roof until the coal from stump No. 10 had been partially removed and it fell from over the place where the coal was removed. From this, the jury may well have believed that the fall of the slate was due not to the improper method of mining described by the experts, but to the removal by Powers of the coal which supported it. In this event, there was no liability on the part of the coal company, since the danger was not due to any negligence on its part, but arose in the progress of and by reason of the work Powers was employed to do. Saxton Coal Co. v. Kreutzer's Adm'x, 202 Ky. 387, 259 S. W. 1022; Eagle Coal Co. v. Patrick's Admr., 161 Ky. 333, 170 S. W. 960.

It results, therefore, from these observations, that this case was one for the jury. The court, however, instructed the jury substantially that if the order, under which Powers was working at the time of his death, "was of such a nature and sufficiently broad and comprehensive that it was reasonable for George Powers to so construe said order as that he could exercise his own judgment" as to whether he should rob pillar No. 10 from room 9 as well as room 10, and it was necessary for him to rob the stump as he did in order to get into room No. 9 to rob pillar 10, and that while he was robbing that stump, a piece of slate fell upon him, it should find for the appellee. This instruction is erroneous. First, it left to the jury the issue of the reasonableness of Powers' construction of an order concerning which there is no evidence whatever in this record. Secondly, it peremptorily instructed the jury to find for appellee if it thought Powers

was, at the time of his death, at a place where he had a right to be. As we have seen, in the absence of any proof as to the orders given Powers as to where they should work, the only issue on this point was whether, under the facts and circumstances surrounding these men, it was reasonable for them to work on pillar No. 10 from both sides. Further, it was a question for the jury to decide whether the fall of the slate was occasioned by an improper method of mining or by a danger which arose in the progress of and by reason of the work Powers was employed to do.

For the error in the instructions, this case will have to be reversed, with directions to grant the appellant a new trial in conformity with this opinion.