# Rex Red Ash Coal Company v. Barley's Administrator.

(Decided March 13, 1928.)

## Appeal from Harlan Circuit Court.

1. Master and Servant.—Where employer was not operating under Workmen's Compensation Act (Ky. Stats., secs. 4880-4987) at time

of employee's death, it could not rely on defense of contributory negligence, assumed risk, or fellow-servant doctrine.

2. Master and Servant—In action for death of coal miner, question whether defendant permitted deceased to work only on condition that he work in certain portion of mine and under direct supervision of his father held for jury.

3. Master and Servant.—In action for death of coal miner, conflict in evidence as to whether deceased was at his proper working place at time he was killed made it question for jury, since where there is evidence that employee was not disobeying orders at time of his injury, or it may be inferred that he was not disobeying orders, question is for jury.

4. Master and Servant.—In action for death of coal miner killed by falling of portion of roof of one of defendant's mines, negligence of defendant in failing to properly inspect entry in which decedent was killed, in failing to properly secure entray and haul road in entry, and in failing to warn defendant of alleged dangerous condition of entry and mine held for jury.

5. Death.—In action by father as administrator of son for death of 16 year old son, a miner, killed by falling of portion of roof of defendant's mine, evidence held sufficient to support verdict for plaintiff of $4,000.

6. Appeal and Error.—In action for death of coal miner killed by falling of portion of roof of defendant's mine, admitting evidence that cost of putting up props to hold up roof would have been insignificant, if error, was not prejudicial.

7. Appeal and Error.—If any of evidence rgearding requests of deceased and his father, coal miners, for timber to be used in propping roof of mine, which had not been supplied, related to requests for timber not to be used as props to make particular place where death occurred safe, its admission was not prejudicial.

8. Appeal and Error.—In action for death of coal miner who was 16 years old at time of death, admitting evidence that deceased was seen around mine dressed in miner's clothes, while irrelevant and immaterial, held not prejudicial, where defendant admitted that deceased was allowed to work in mine under supervision of his father.

9. Appeal and Error.—In action for death of coal miner killed by falling of portion of roof of mine, admitting evidence that trackman said to witness that he had orders to lay track for deceased, but did not say at what point, held not prejudicial.

10. Appeal and Error.—In action for death of coal miner, asking of questions regarding whether mine foreman had said after accident that he was sorry that boy was killed, but that if it had been boy's father it would not have made any difference, held not prejudicial where court sustained objection and court was not asked to admonish jury not to consider question.

11. Witnesses.—In action by father as administrator for son for death of son while employed in coal mine by falling of roof, father could

testify, under Civil Code of Practice, sec 606, as to conversation he had with defendant's superintendent and foreman, and regarding dangerous condition of mine entry, and as to character of work his son engaged in.

12. Master and Servant.—In action for death of coal miner killed by falling of portion of roof of defendant's mine, instruction relating to defendant's duty to furnish safe place to work held properly given, where deceased was neither shooting coal down nor removing support beneath roof when killed.

13. Master and Servant.—In action for death of coal miner, who was 16 years old, in which defendant claimed it did not employ deceased but that he was employed by his father, instruction that deceased may have been an employee of defendant without his name appearing on books or pav rolls, provided defendant knew that he had been working for it for reasonable length of time prior to his injury, and that it continued to suffer, permit, and allow him to continue work and to pay him for his work, held unobjectionable.

14. Master and Servant.—In action for death of 16 year old boy killed by falling of portion of roof of defendant's coal mine, instruction to find for defendant employer if jury believed from evidence that superintendent or foreman had directed that deceased should not work in mine except when his father was present, and, if notwithstanding such instructions, he disobeyed them and went into mine when father was not present at place where he was instructed not to work, held sufficiently favorable to defendant.

15. Trial.—In action for death of coal miner, refusing requested instructions held not error, where court gave other instructions in proper form covering same issues as those covered by rejected instructions.

LEE & SNYDER for appellant.

POPE & HUFF for appellee.

OPINION OF THE COURT BY JUDGE LOGAN—Affirming.

Daniel Barley, son of Sol J. Barley, was killed by the falling of a portion of the roof of one of appellant's mines in Harlan county. Sol J. Barley was appointed administrator of his estate and as such instituted this suit against appellant seeking to recover $30,000 in damages. Daniel Barley was 16 years old when he was killed and had been working in the mine since the 28th day of October, 1926, until the day of his death, which was December 18th of the same year. It is alleged that young Barley was killed in the line of his duty and while working within the scope of his employment. The negligence alleged is that appellant had failed and neglected to

properly inspect the entry in which appellee's intestate was killed; that it had failed and neglected to properly examine, inspect, and scale the overhead roof along the entry; that it had failed and neglected to properly secure the entry and the haulroad in the entry where he was required to work by posts, props, cross-timbers, or other safe contrivances; that it failed and neglected to warn the decedent of the alleged dangerous condition of the entry and mine, although it knew, or by the exercise of ordinary care could have known, that the entry was unsafe; that the public haulroad was built through an old section of the mine; and that appellant allowed the roof of that section of the mine to take weight without protecting the haulway.

Appellant traversed each allegation of negligence found in the petition, and as a further defense it alleged that it did not employ Daniel Barley to work for it, but that he was employed by his father, Sol J. Barley, to work for him and on his number; that Sol J. Barley was warned by appellant that Daniel Barley would not be allowed to work in the mine at all except when his father was present and directly under his supervision. It is alleged that, but for the violation of the instructions so given, young Barley would not have been killed, and that at the time he was killed he was working in the mine wrongfully and in violation of the instructions of appellant. It is further alleged in the answer that Sol J. Barley knew that his son was inexperienced and that he knew the danger incident to the work which his son was doing, and that it was on account of the negligence of Sol J. Barley in sending his son into a dangerous place contrary to the instructions given by appellant that brought about his death. In another paragraph of the answer it is alleged that Sol J. Barley had been assigned a particular place in the mine in which to work, and that he and Daniel Barley had no right or authority to work in any other place or section of the mine, and that Daniel Barley, under the instructions of his father, went into a different section of the mine where he was killed.

Appellant was not operating under the Workmen's Compensation Act (Ky. Stats., secs. 4880-4987) and was therefore not entitled to rely upon the defense of contributory negligence, assumed risk, or fellow-servant doctrine. Saxton Coal Co. v. Kreutzer's Adm'x, 202 Ky. 387, 259 S. W. 1022; Gatliff Coal Co. v. Powers' Adm'r, 219 Ky. 839, 294 S. W. 472.

The testimony in this case showed that in the latter part of October, 1926, Sol. J. Barley requested that his son be employed to work in the mine. His request was refused because the son was under 16 years of age, but he was advised that his son might begin work when he reached that age. He did not commence work until after he reached the age of 16. Appellant admits that it permitted Daniel Barley to work, but claims that the permission was accompanied by the limitation that he should work in a certain portion of the mine and under the direct supervision of his father, and not elsewhere or otherwise. There is a sharp conflict in the evidence as to whether there was any such limitation on the employment of the boy. The father testified there was no such limitation, and that made it a question for the jury.

Even if there had been such limitation in connection with his employment, there is a sharp conflict in the evidence as to whether Daniel Barley was at his proper working place at the time he was killed, which made it a question for the jury. Where there is evidence that the employee was not disobeying orders at the time of his injury or death, or where the facts are such that it may be inferred that he was not disobeying orders, the question is for the jury. Saxton Coal Co. v. Krentzer's Adm'x, supra; Gatliff Coal Co. v. Powers' Adm'r, supra, Clark County Construction Co. v. Richards' Adm'r, 202 Ky. 276, 259 S. W. 331; General Construction Co. v. Ford, 211 Ky. 159, 277 S. W. 313.

The testimony showed that the father worked with his son only a few days after the son was employed. This is not disputed. There is evidence that the superintendent and foreman of appellant knew that the son was working in the mine when the father was not present, although the evidence is conflicting on this point.

There is evidence that the haulroad where the son was working at the time of his death was in a dangerous condition, and that appellant knew of such condition, although there is a conflict in evidence on this point. The evidence showed without contradiction that a slab of slate 17 feet long fell from the roof over the haulroad, and that it was the falling of this slate which caused the death of appellee's intestate. As the roof of the mine was under the exclusive control, management, and maintenance of the master and other negligence is shown on the part of the master, it is probable that the doctrine of res ipsa loquitur would apply, although it is not neces-

sary to go into that question. The evidence was sufficient to take the case to the jury and to support the verdict for $4,000, which makes it necessary to consider the errors assigned for reversal. One is that the court allowed appellee to introduce incompetent evidence in his behalf over the objections of appellant. One of the witnesses for appellee was asked as to the cost of putting in props to hold up the roof, and he stated that the cost would have been insignificant. If this evidence was incompetent, and we are not called upon to decide whether it was, certainly, it was not prejudicial. It is true, it was the duty of appellant to maintain the roof in a safe condition, and whether it would cost much or little to do so was immaterial, yet it might have been proper in showing the degree of negligence to introduce proof which would have shown that, with slight effort, the roof could have been made safe.

There was proof that Sol J. Barley and his son had asked for timbers to be used in propping the roof of the mine which had not been supplied. It is argued that this was incompetent as the place where the timbers for which they asked were to be used was not the place the boy was killed. We do not so read the evidence. The timbers were to prop up the roof of what was known as the "Barley entry," and there is evidence showing that if the roof had been propped in the vicinity of the place where his death occurred, it would have kept some of the weight off the particular section of the roof which fell. If any of the evidence related to requests for timber not to be used as props to make the particular place where the death occurred safe, the evidence should not have been admitted, but we are not certain from the record that any of the proof related to such a request, and if it did there is so little of it that we have no difficulty in holding that it was not prejudicial. It is urged that the evidence that Dan Barley was seen around the mine dressed in miner's clothes was incompetent. That evidence was irrelevant and immaterial, as it was admitted that Daniel Barley was allowed to work in the mine under the supervision of his father, but the jury could not have been misled in any way by the evidence.

It is urged that it was incompetent to prove that the trackman stated, after the boy was killed, that he was getting ready to go into that entry to lay track at the place where the boy was killed. The witness did not say

that the trackman told him that he was preparing to lay track at that point. The trackman said to the witness that he had orders to lay track for the Barley boys, but he did not say at what point.

There is nothing prejudicial in this evidence. An effort was made to show that the mine foreman said after the accident that he was sorry that the boy was killed, but if it had been old Sol Barley it would not have made any difference. The court sustained an objection to this question and the witness was not allowed to answer. It is complained that this was prejudicial. The question should not have been asked, but as the court held that it was incompetent we are unwilling to say it was prejudicial. Appellant did not ask the court to admonish the jury not to consider the question for any purpose.

It is urged by counsel for appellant that Sol J. Barley could not testify for himself in the case because of the provisions of section 606 of the Civil Code. There is no merit in this contention. Sol J. Barley testified as to the conversation that he had with appellant's superintendent and foreman. He also testified as to the dangerous condition of the entry and as to the character of work his son engaged in. He did not testify as to any transaction with his son or to any act which was done by his son or omitted to be done by him. In addition, the record shows that there were no objections to any of the testimony of Sol J. Barley except to that relating to the time when his son began work and the condition of the roof of the mine.

Another alleged error relied on by appellant is that instructions 1, 2, 3, and 5 are erroneous. Instruction No. 1 relates to the duty of the appellant to furnish a safe place for the employee in the prosecution of his work. It is suggested that such an instruction should not have been given as the work of taking out the coal made it necessary to shoot the coal down and thus remove the support from beneath the roof, and that, if the place where the boy was killed was rendered unsafe during the progress of the work, the duty of appellant to keep the place safe is modified or abrogated. It was so held in the case of Parsley v. Horn, 196 Ky. 556, 245 S. W. 140. The proof in this case showed that Daniel Barley was neither shooting the coal down nor removing the support beneath the roof. The coal had been shot down some time before by the father. The facts in this case distinguish

it from the case of Parsley v. Horn. Instruction No. 2 relates to the definition of an employee. It would not have been error in this case if the court had not given any instruction on this point, as there is little room for doubt that Daniel Barley was an employee of appellant at the time of his death, but the instruction is substantially the same as that approved in the case of Employers' Indemnity Co. of Philadelphia v. Kelly Coal Co., 149 Ky. 712, 149 S. W. 992, 41 L. R. A. (N. S.) 963. Instruction No. 3 may have been omitted as it did no more than to tell the jury that Daniel Barley may have been an employee of the appellant without his name appearing on the books or payrolls, provided appellant knew that he had been working for it for a reasonable length of time prior to his injury, and that it continued to suffer, permit, and allow him to continue the work and to pay him for his work. The instruction is unobjectionable in the form in which it was given. Instruction No. 5, complained of by appellant, is as favorable to it as it had any right to ask. It told the jury to find for the appellant if it believed from the evidence that the superintendent or foreman had directed that Daniel Barley should not work in the mine except when his father was present, if it should further believe from the evidence that, notwithstanding such instructions, he disobeyed them and went into the mine when his father was not present at a place where he was instructed not to work.

Another alleged error is that the court did not give certain instructions offered by appellant. The instructions given by the court submitted the issues to the jury and there was no necessity for additional instructions. Where the instructions asked for are refused it is not error if the court gave other instructions in proper form covering the same issues as those covered by the rejected instructions.

Another alleged error relied on is that the negligence of Sol J. Barley, if any, should be imputed to his son. It is not necessary for us to decide that question. It was submitted to the jury under an instruction that directed it to return a verdict for appellant if his father, knowing that he was inexperienced and knowing the place where he was to work was dangerous, set him at his work in the dangerous place. The jury found that the father did not send his son into the dangerous place. The evidence was conflicting on the point as there was evidence showing that the mine foreman instructed

Daniel Barley to work at the place where he was killed. It is true that it was held in the case of Kentucky Utilities Co. v. McCarty's Adm'r, 169 Ky. 38, 183 S. W. 237, that, where the only negligence of the employer is the employment of an infant in violation of the statute, no recovery can be had by that parent who knowingly suffered the employment. But that is not the case here.

Having reached the conclusion that the judgment of the lower court should be affirmed, it is not necessary to pass on the motion to strike the bill of exceptions from the record. We have examined the motion and the briefs filed in support thereof and in opposition thereto, and it appears that the motion would have to be overruled if it should be necessary for us to pass on the question.

Judgment affirmed.