## Powers v. Gatliff Coal Company.

(Decided December 4, 1928.)

(As Modified, on Denial of Rehearing, March 19, 1929.)

6

R. L. POPE for appellant.

TYE & SILER for appellee.

OPINION OF THE COURT BY COMMISSIONER HOBSON—
Reversing.

George Powers was killed in the mine of the Gatliff Coal Company by a fall of slate, and this action was brought by his administrator against the company to recover for his death. On the first trial of the case there was a verdict for the plaintiff, but on appeal it was held by this court that the instructions were erroneous, and for this reason the judgment was reversed. The court concluded its opinion with these words:

"As we have seen, in the absence of any proof as to the orders given Powers as to where they should work, the only issue on this point was whether, under the facts and circumstances surrounding these men, it was reasonable for them to work on pillar No. 10 from both sides. Further, it was a question for the jury to decide whether the fall of the slate was occasioned by an improper method of mining or by a danger which arose in the progress of and by reason of the work Powers was employed to do." Gatliff Coal Co. v. Powers' Adm'r, 219 Ky. 839, 294 S. W. 472.

On the return of the case to the circuit court, it was tried again. The company on the second trial did in-

troduce proof as to orders given Powers as to where he should work, and at the conclusion of the evidence the court instructed the jury peremptorily to find for the defendant. The plaintiff appeals.

The proof as to the orders given Powers was the testimony of W. D. Millstead and H. G. Bingham. The plaintiff objected to this testimony on the ground that these men were the superiors of Powers, were liable to him for their negligence, and therefore were testifying for themselves, contrary to section 606 of the Civil Code cf Practice. But neither of these men was sued. Being strangers to the action, they were not bound by any judgment rendered in the action, and in a number of cases this court has admitted such testimony, where the managing agent of the defendant was not sued. In Saxton Coal Co. v. Kreutzer's Adm'x, 202 Ky. 387, 259 S. W. 1022, the agent whose testimony was held to be incompetent under section 606 was a defendant to the action. In Smick's Adm'r v. Beswick's Adm'r, 113 Ky. 439, 68 S. W. 439, 24 Ky. Law Rep. 276, the attorney whose testimony was held incompetent had a direct personal interest in the recovery, for his fee was wholly contingent upon the establishment of his client's claim, and by the statute he had a lien upon the recovery therefor. In the other cases relied on, the person, such as stockholders in a corporation, who were held incompetent, had a direct personal interest in the action. Not so here. The action is brought simply against the corporation. In such an action it was held, under the common-law rule, that the agent could testify for his principal, and was not rendered incompetent by the fact that he might be answerable over to his principal in case the principal was held liable. Alexander v. Emerson, 2 Litt. 25; Bank of Kentucky v. McWilliams, 2 J. J. Marsh. 256; Weaver v. Bracken County Court, 18 B. Mon. 728; Dunlop v. Munroe, 7 Cranch. 242, 3 L. Ed. 329. The rule under a statute like ours is thus stated in 28 R. C. L. p. 504, sec. 91:

"Where a statute declares a person interested in the event of a suit against the estate of deceased incompetent to testify therein, it is considered that the expression 'interested in the event' was never intended to enlarge the class to be excluded under it beyond what the common law excluded in using the same language with reference to interested persons

generally. Accordingly, following the trail blazed by the common-law decisions, it is held that interest, to disqualify a witness, must be present, certain, and vested, not uncertain, remote, or contingent, and must be in the event of the action.''

In 4 Jones on Evidence, p. 841, sec. 788, the rule on the weight of authority is thus stated:

"The rule more generally adopted seems to be that, as the agent is not a party to the action, nor bound by the judgment, he is a competent witness for the adverse party to prove any transaction or communication with the deceased or incompetent person.''

This court has, since the adoption of the Code of Practice, consistenly followed the above rule, holding the evidence of the agent competent where the adverse party was dead. Brooks v. Spain, 60 S. W. 184, 22 Ky. Law Rep. 1178; Parker's Adm'r v. Cumberland Telephone & Telegraph Co., 77 S. W. 1109, 25 Ky. Law. Rep. 1391; Massey's Adm'r v. Pike etc., Coal Co. (Ky.) 116 S. W. 276; Cobb's Adm'r v. Wolf, 96 Ky. 418, 29 S. W. 303, 16 Ky. Law Rep. 591; Paducah Cooperage Co. v. Paducah Veneer Co., 135 Ky. 53, 121 S. W. 896; Winston's Adm'r v. Spinks, 163 Ky. 253, 173 S. W. 753; Trevathan's Ex'r v. Dees' Ex'rs, 221 Ky. 396, 298 S. W. 975, and cases cited.

It remains to determine whether under the proof, the case should have been submitted to the jury. Powers was killed in No. 9 neck. The defendant sought to show that he was ordered to work in No. 10 neck, and not to work in No. 9. W. D. Millstead testified that, on the day before Powers was killed, Powers told him that he wanted to get the coal out of No. 9 switch, and he told Powers that the rock was in such condition in No. 9 neck that he could not get the coal through there. He also testified that H. G. Bingham was present when Powers asked him for permission to withdraw pillar No. 10 out through room neck No. 9, and that the conversation occurred at the pillar. Being asked why he reached this conclusion he said:

"It was all fell in there, and it cost too much to clean up the rock to get through there,''

—and that he so told Powers. He said it would cost $35 or $40 to do this.

H. G. Bingham testified that he was present and heard the conversation between Powers and Millstead on the day before Powers was killed, and he also testified that, on the morning on which Powers was killed, Powers asked him about going in No. 9 neck and taking the coal out through No. 9 neck, and he forbid him to do it. He said Millstead was not present at this time. He also says that it would have cost the company quite a bit to timber the top in neck No. 9, and that was the only reason he gave him for what he told him.

On the other hand, the proof for the plaintiff is that Powers and George Fox were buddies in the work of pulling down pillar No. 10, and that neither of them was at work on the day before Powers was killed. George Fox says that he was there at the pillar at work with Powers, and that neither Bingham nor Millstead were there at any time that morning, or any morning, and that nothing was said at any time there about not working in neck No. 9. As the men were buddies in the work, ordinarily the instructions as to where they should work would have been given to both of them. The testimony of the bosses on other questions in the case was contradicted, and both of them are contradicted by Fox as to what Millstead told Powers. They are also contradicted by the proof that Powers was not in the mine at the time they state.

In addition to this, the reason which both the witnesses testified induced them to tell Powers not to work there may have induced Powers to understand that what they had in their minds was the cost to the company, of changing the track, and that it was not an order to the workers not to work there. Powers was shown to be an obedient miner, always obeying orders, and what took place between him and Fox, just before Powers was killed, would rather indicate that he was not conscious of disobeying any order from his superior. When Powers was killed, he had taken off about 3½ feet of the stump of pillar No. 10 in neck 9, so as to place cars on that side, load them faster and get them out easier. What he had done or was doing added nothing to the expense of the company. It was his duty to obey the

orders of his superiors; but he did not disobey, unless a man of ordinary prudence, situated as he was, would in the exercise of ordinary prudence have understood what was said to him to forbid him to do what he did.

In determining this question, all the circumstances may be considered by the jury. The rule is that, if there is any conflict in the evidence, the question is for the jury, and under this rule the court should not have instructed the jury peremptorily to find for the defendant, but should have submitted the question whether Powers had been ordered not to work in neck No. 9 to the jury as above indicated, as well as the other questions indicated in the former opinion. Saxton Coal Co. v. Kreutzer's Adm'x, 202 Ky. 387, 259 S. W. 1022.

The plaintiff offered to prove in chief by George Fox that after Powers was killed, Millstead came up and was kind of crying, and said he might have been the cause of it. This evidence as to what occurred after Powers was killed was not competent against the coal company; for what an agent says after a transaction is over is never competent against his principal. The proof is indefinite as to how long this was after the fall of the slate that killed Powers. All that occurred between Fox and Powers at the place of work just before he was killed is competent as res gestae, and anything said by the persons who came up immediately and so close to the killing as to be fairly a part of the transaction may be also admitted. L. & N. R. Co. v. Foley, 94 Ky. 220, 21 S. W. 866, 115 Ky. Law Rep. 17; L. & N. R. Co. v. Molloy's Adm'x, 122 Ky. 219, 91 S. W. 685, 28 Ky. Law Rep. 1113; I. C. R. Co. v. Houchins, 125 Ky. 483, 101 S. W. 924, 31 Ky. Law Rep. 93; L. & N. R. Co. v. Strange's Adm'x, 156 Ky. 439, 161 S. W. 239. But, to make such statements competent, the facts as indicated in above cases must be shown. This evidence may be competent to contradict Millstead, but to make it admissible Millstead must be first asked if he made these statements at this time and place, and this was not done on the trial.

Judgment reversed, and cause remanded for a new trial and further proceedings consistent herewith.