# Hall v. Proctor Coal Company.

(Decided October 31, 1930.)

(As Modified on Denial of Rehearing February 6, 1931.)

814

TYE, SILER, GILLIS & SILER for appellant.

R. L. POPE and C. B. UPTON for appellee.

OPINION OF THE COURT BY COMMISSIONER HOBSON—Reversing.

On February 23, 1927, the Proctor Coal Company was operating a coal mine in Whitley county and had not accepted the provisions of the Workmen's Compensation Act (Ky. Stats. Secs. 4880-4987). J. W. Hall was a miner in its service and was injured in the mine. He brought this suit to recover for his injuries on January 5, 1928. Among other things the defendant pleaded that after his injuries Hall had been sent to an infirmary and the defendant had paid his expenses and doctor's bill and furnished money to him, amounting in all to $1,531.97, which it pleaded as a counterclaim and prayed judgment therefor. The case coming on for trial, the jury returned this verdict on March 2, 1928; "We the jury find for the defendant $1,531.97. We find nothing for plaintiff." On motion for a new trial the court set aside the verdict of the jury so far as it found against the plaintiff's claim and granted a new trial, but refused to set aside the verdict for the defendant for $1,531.97, or the judgment pursuant thereto. The case came on again for trial on February 23, 1929. The jury returned this verdict: "We the jury do agree and find for the plaintiff the sum of $7,500." On motion for a new trial the court set aside the verdict of the jury and granted a new trial. On the third trial of the case on June 12, 1929, a majority of the jury returned this verdict: "We the jury, find for the plaintiff, J. W. Hall, the sum of $2,900.00." The court entered judgment on the verdict and refused a new trial. The plaintiff appeals, and the defendant prosecutes a cross-appeal. No bill of exceptions of the first trial was made up, and that matter is not before this court.

Appellant insists that the court erred in granting the second new trial, and that on final hearing it should have

sustained the second verdict and entered judgment in his favor for $7,500. Appellee insists that neither verdict should stand, and that it should have had a peremptory instruction in the circuit court.

The facts, as shown by the plaintiff, are these, the evidence on the two trials being practically the same: Hall was at work on the second right entry. The rooms on this entry were numbered consecutively: those on the right being given even numbers and those on the left odd numbers. But the rooms were not directly opposite; the pillars between the rooms on one side facing the open space on the other side. There were 19 rooms on the entry, all of which had been worked out, and the company was taking out the pillars. They had begun at the head of the entry and after they had worked a while water got in the way about room 15. Thereupon the company had Hall and his buddy to cut a hole through the stump of this room to let the water out. After this was done Hall and his buddy were put to work on the pillar of room 10, and some others were at work on 11. There was a swag in the entry as you came from the head down toward 15. At 15 there was a space about 50 feet in the entry which was not timbered. The entry was used for the men in going backward and forward to their work and cars were run on it to bring in timbers and to carry out the coal. On the morning in question, when Hall and his buddy had been working for a while in room 10, the slate began to pop and in accordance with the custom of the mine they got out of the room to wait until it settled. Hall's buddy got his lunch out and commenced to eat his dinner. The usual thing for men to do under such circumstances was to get out of the room and get into the entry. It was not safe to stay in the passageway on account of the wind if a fall of slate occurred in the room. He did not think that the trouble would last long and thought they could soon go to work again, but notified the track man to take up the track in the room so that it would not be covered up if a fall came. It is admitted by all that, when the room became dangerous, the proper thing for the men to do was to come out in the entry. Hall had used up all of the cap boards that he had. A cap board is a board about fourteen inches long and about four inches wide, which is placed on the top of a prop to prevent the prop from breaking through the slate when the weight comes against it; thinking that he would need more cap boards as soon as they could work again, Hall

started up the entry to get some, and when he had reached room 15, where the entry was not timbered, a piece of rock, about 3 feet wide and 4 feet long and a foot thick, fell down from the roof of the entry. It first struck a car of coal standing on the track and glanced from the car of coal striking Hall on both legs between the knee and the ankle, crushing the bones in both legs fearfully. He was taken out of the mine on a car and sent to the hospital and was there for weeks suffering intensely. Finally one of his legs had to be cut off. The other was saved, but his foot was turned sideways, and was not as strong as before. He was entirely disabled when he recovered from performing any duties as a miner. He was earning $3 a day, and after he got to work he was only able to make $1 a day at some sedentary occupation. The company paid all of his hospital and doctors' bills up to the time he brought the suit, but declined after he brought the suit to pay anything further. Hall testified and also proved by a number of other miners that, according to the custom of the mine when a man temporarily got out of cap boards and there were boards in the entry not far from him, he could go and get them instead of waiting to have them sent to him from the outside of the mine. Hall's place of work was some 2,000 feet from the outside of the mine, and the place where he was injured was 143 feet from where he was working. The cap boards that he was going after were only a little beyond where he was struck.

On the other hand, the proof for the defendant was that Hall said to his buddy that he was going up there to see where that water was coming from, and that he said to two persons on the opposite side of the entry that he was going up there to see what the other boys were doing, and that after he was hurt Hall said the same thing at the mouth of the mine. But he denied making any of these statements. The question whether the verdict of the jury is palpably against the evidence is reserved and not decided. The defendant also proved by a number of witnesses that the custom of the mine was that whenever a man wanted timbers he should mark them on the outside and have them sent in to him, and that there was no custom for one man to use timbers brought in for another. The defendant also insists that there were plenty of cap boards on the other side of the entry just opposite where he was at work; but he says otherwise.

While the proof for the defendant was to the contrary, the proof for the plaintiff showed that the piece of rock that fell out of the untimbered space was sprung shot, which in mine parlance means that the shot put in there failed to bring the rock but sprung it; and this was shown by the blackened surface of the rock. The plaintiff's proof also showed that the entry had been cracking for several days and this was known to the timberman, whose duty it was to timber it; also that the usual way of mining in moving pillars is to start at the head of the entry and come down consecutively, and that the way the work was done here was dangerous, for the reason that coal was removed which supported the rock overhead, and that when this was done below the swag a greater weight would be thrown upon the swag. While the evidence is contradictory, the court cannot say that there was not sufficient evidence to take the case to the jury. The court granted the first new trial on the ground that some mistakes had been made in the instructions to the jury. It does not definitely appear on what ground the second new trial was granted.

The instructions of the court to the jury were the same on the second and third trials of the case, and so the correctness of the instructions is one of the questions presented. The master in a case like this is not the insurer of the safety of his servant. It is only his duty to exercise ordinary care to keep reasonably safe the servant's place of work. If it becomes unsafe, he is not responsible, unless he knew, or, in the exercise of ordinary care, should have known, that it was not reasonably safe, and then could by ordinary care have made it reasonably safe before the plaintiff's injury. This was not sufficiently expressed in the court's instruction 1, and under the facts of this case, and especially in view of the fact the work done day by day was changing conditions, and in view of the evidence for the defendant, instruction 1 was prejudicial to it. The instruction asked by the defendant that the plaintiff could not recover, if he knew the entry was dangerous near the place where he was hurt, and with that knowledge went there, was properly refused. If he did this, he could not recover at common law on the ground that in so doing he took the risk, but as the parties were not working under the Workmen's Compensation Act, though within its application, neither assumed risk nor contributory negligence is a defense for the company. Gatliff Coal Co. v. Sumner, 196 Ky.

592, 245 S. W. 144; Saxton Coal Co. v. Kreutzer, 202 Ky. 387, 259 S. W. 1022; Gatliff Coal Co. v. Powers, 219 Ky. 839, 294 S. W. 472; Rex Ash Coal Co. v. Barley, 224 Ky. 485, 6 S. W. (2d) 724; Nugent Sand Co. v. Howard, 227 Ky. 91, 11 S. W. (2d) 985; Highsplit Coal Co. v. Palmer, 231 Ky. 24, 20 S. W. (2d) 1020. A contrary rule was not laid down in W. G. Duncan Coal Co. v. Lock, 205 Ky. 747, 266 S. W. 640, for it did not appear there that the statute applied. Nor was this question presented in Gibralter Coal Co. v. Nalley, 214 Ky. 431, 283 S. W. 416, which turned on the want of knowledge of the danger on the part of the defendant. That opinion in fact recognizes the rule above stated and simply stated the common-law rule as to what should be alleged.

For the same reason the instruction asked by the defendant, to the effect that Hall could not recover, if he failed to use ordinary care to learn of the danger, was properly refused; and these words in instruction 1 as given by the court should have been omitted: "And that plaintiff was at said time exercising ordinary care for his own safety." On another trial the court, in lieu of instruction 1, will give the following: "If the jury believe from the evidence that the entry in question was not in a reasonably safe condition at the time and place referred to in the evidence, and that the defendant or any of its servants superior in authority to the plaintiff knew or by the exercise of ordinary care should have known that it was not in a reasonably safe condition in time by the exercise of ordinary care, to have made same reasonably safe before the injury to plaintiff and that the defendant failed to exercise ordinary care to keep and maintain its said entry in a reasonably safe condition and that as a direct and proximate result of such failure, if any, a block of slate fell from the roof of said entry and struck the body or legs of plaintiff and as a direct and proximate result thereof injured him and that plaintiff had then a right under instruction No. 3 to be on said entry, then in that event the law is for the plaintiff and you will so find. Unless you so believe your findings will be for the defendant."

On January 7, 1929, the plaintiff tendered an amended petition alleging that he had been disabled from performing any work for twenty-three months to his damage in the sum of $1,725; also that as the direct and proximate result of his injuries he had expended and

would have to expend the sum of $1,725 for reasonable doctors' bills, hospital bills, and medicine for which he prayed judgment. He had not made in his original petition any allegation as to doctors or hospital bills or other like expenses.

The court refused to allow the amended petition to be filed. On the return of the case the court will allow it to be filed. The rule as to the necessary expenses incurred, but not paid, is thus stated in 17 C. J. p. 803, sec. 129: "A recovery may be had for expenses of this character, although the charges therefor have not been paid before the action is brought. It is sufficient that plaintiff shall have either paid for such services or shall have incurred liability therefor."

Were the rule otherwise, a man without means and disabled might be denied proper compensation for his injury; for he would not be expected to leave these things unpaid, when he had means. If one wrongfully injures another's house, the owner may recover the reasonable cost of repairing the house before he has paid the contractor therefor, when the injury of the house may be repaired at a reasonable cost; and there is no reason why the same rule should not apply to an injury of the body. Drinkwater v. Dinsmore, 80 N. Y. 390, 36 Am. Rep. 626; Indianapolis, etc., R. Co. v. Haverstick, 35 Ind. App. 281, 74 N. E. 34, 111 Am. St. Rep. 170; Consolidated Coach Corp. v. Saunders, 233 Ky. 321, 25 S. W. (2d) 722. So compensation for future medical services necessary but not performed or paid for, has been allowed. Blue Grass Traction Co. v. Ingles, 140 Ky. 494, 131 S. W. 278; Lexington, etc., R. Co. v. Fields, 152 Ky. 22, 153 S. W. 43.

The judgment rendered in favor of the defendant at the first trial for $1,531.97 was not appealed from and is final. It is conclusive upon the parties that the plaintiff must pay the defendant this money and so is conclusive that the defendant did not owe him the sums so paid. But he may recover for any other necessary reasonable expenses incurred by him and for his lost time. On another trial the court will modify instruction 2 on the measure of damages as above indicated.

By instruction 3 the court in substance told the jury that, if there was a general custom or rule in the mine, acquiesced in by the company and the miners, including plaintiff, that the miners had a right to go anywhere

on the entry on which they were working to get caps for their working places, and that if plaintiff was on the entry to get caps and for no other purpose, then he had the right to be where he was injured, and they should find for the plaintiff; otherwise they should find for the defendant.

The instruction fairly submitted the issues in the case. The entry was in daily use by all the miners. Some were working above and some below room 15. The cars were run on the track there by the company at that time. There was no recklessness on the part of the plaintiff in going where he was. Everybody used the entry. It was his duty when his room cracked to go into the entry, and, if he was out of caps and expected soon to need them, it is hardly reasonable that he would be expected to go out of the mine to get them when others were nearby. If he was complaining that the company had not furnished him caps, a different question would be presented. Then section 2726-1 et seq., Ky. Stats., would apply; but it has no application to the facts shown here under the custom as shown by the plaintiff. By section 2738c-1, Ky. Stats., all persons employed must obey the mine rules. But if the plaintiff's proof was true, he had not disobeyed the rules, but was acting in accordance with the rules when he was hurt. He is not complaining that he was injured by the failure of the defendant to furnish him timbers. His complaint is that it negligently failed to keep its entry reasonably safe for him while in the discharge of his duty under the rules.

Whether the plaintiff's act in going where he was with such knowledge as he had of the conditions was the proximate cause of his injury was a question for the jury under the evidence. Under the instructions of the court he could not recover unless the defendant's negligence was the proximate cause of his injury. This question therefore was submitted to the jury by the direction that otherwise they should find for the defendant.

If the weight of the rock above the coal rested on all the pillars and stumps left under it, and parts of these were removed, a greater weight would be thrown on those remaining, and this greater weight may have caused the cracking of the rocks and the fall of the rock in the entry, shown by the proof. These were questions for the jury.

The judgment is reversed on the appeal and the cross-appeal, and the cause is remanded for a new trial as above indicated. Appellant and appellee will each pay his own cost in this court, including one-half the cost of the transcript.