CASE 30.—DEATH ACTION BY EDWARD J. LONG'S ADMINISTRATOR AGAINST THE LOUISVILLE & NASHVILLE RAILROAD COMPANY.—March 18, 1909.

## L. & N. R. R. Co. v. Long's Admr.

Appeal from Kenton Circuit Court, Law & Equity Division.

M. L. HARBESON, Judge.

Judgment for plaintiff, defendant appeals.—Reversed.

1.  Negligence—Actions—Evidence—Proximate Cause.—In an action for negligent injuries, plaintiff must prove negligence naturally resulting in the injury, and, unless the proof connects the proved injury as a rational and proximate result of the proved negligence, there is nothing to submit to the jury, and the absence of evidence upon any material point is as fatal as the absence of all evidence would be.     •

2.  Master   and   Servant — Injuries—Evidence — Sufficiency.— In an action for the death of a railway brakeman  evidence held not to satisfy the burden upon plaintiff to show that the negligence of defendant's engineer in starting the train was the proximate cause of  the death.

BENJAMIN D. WARFIELD and S. D. ROUSE for appellant.

MYERS & HOWARD for appellee.

OPINION OF THE COURT BY WM. ROGERS CLAY, COM-
MISSIONER—Reversing.

In this action Edward J. Long's administrator re-
covered a judgment against the defendant, Louisville
& Nashville Railroad Company, for the sum of $8,000,
for the death of his decedent. A new trial was de-
nied, and the railroad company appeals.

The main question in the case, and the only one
which we deem it necessary to discuss, is whether or
not a peremptory instruction should have gone for
appellant. In this connection it may be proper to
give the different grounds of negligence charged in
plaintiff's petition and amended petition. It was al-
leged in the original petition that Long was killed as
a result of the gross negligence of the employes of de-
fendant other than the decedent. Then it was charg-
ed that the accident resulted from an open switch.
It was also charged that the trainmen were inex-
perienced and incompetent. There was the further
allegation that, after the decedent had been run over,
and while he was yet alive, and after the train had
come to a stand, the employes thereon put the train
in motion and again ran the wheels over the decedent.
Appellant then filed an answer denying these allega-
tions of the petition, and also pleading contributory
negligence. Thereafter plaintiff filed an amended
petition, in which he, in substance, alleged that de-
cedent was ordered by the conductor of the train to
pack hot boxes upon some cars of the train, and while
so engaged the train, without notice or warning to
him, was started forward, and thereby the decedent
was caught between the wheels and trucks of one or
more cars and run over by same, and thereby met his
death, and that the conductor was guilty of gross neg-

ligence in not notifying the engineer that Long was so engaged; or, the petition says, upon the starting of said train while Long's work was incomplete, he undertook to stop the train by stepping between two of the cars thereof and pulling what is known as the "Sullivan valve," attached to one of the cars, thereby stopping said train, and in doing so was caught in a switch point, thrown down, run over, and killed. The amended petition further charged that said decedent was caught, run over, and killed in one of the two ways above set out, and in which of said ways the plaintiff does not know, and that, if the decedent stepped between said cars and pulled the Sullivan valve, the decedent was, in so doing, discharging the duty devolving upon him in his position as a member of said train crew. In the second paragraph of the amended petition, it was alleged that the engine was set in motion and the train moved without any signal from the conductor or any other member of the crew, and the decedent was thereby run over and killed. Then the petition further states: "The plaintiff says that this decedent was run over and killed by said train by and because of the gross negligence of defendant hereto in some one of the respects set out in the petition and set out herein, and he does not know which one, or that said decedent was run over and killed because of the concurrence of two or more or all of said causes, and as to this plaintiff does not know."

The record discloses the following facts: Long was killed on January 11, 1906, about 1:15 o'clock a. m. At the time of his death he was flagman and rear brakeman on one of appellant's freight trains, which was operated on its Kentucky Central division. He had been in appellant's employ for several years. On

the night of the accident a northbound train, composed of 27 cars and manned by a crew of which Long was rear brakeman and flagman, was side-tracked at Cynthiana Station in order to permit a southbound freight to pass on the main track. When the northbound freight was side-tracked, the conductor of the train and decedent started along for the purpose of ascertaining whether or not the train was in proper condition to continue its journey to Covington. To this end they began an examination of the hot boxes, broken brake rigging, defective couplings, etc. When the front trucks of the sixth car from the rear were reached, a hot box was discovered. The conductor put Long to work packing this hot box. Long had with him a lantern, a box of saturated waste, and his packing iron. The hot box upon which decedent was at work was situated on the left side of the train. The conductor left decedent engaged at this work and walked towards the front of the train. Very soon the southbound freight train passed by. Then the northbound train was started forward and proceeded for a distance of about two car lengths, when it was suddenly stopped by the application of the Sullivan valve. Shortly thereafter the conductor returned to the point where decedent had been employed, and he found him almost at the same point where he was engaged in packing the hot box, lying under and near near the front end of the third car. He was lying on his back with his head towards the engine. The Sullivan valve, which had been pulled, was located on the front end of the third car. Decedent's bucket and tools were near by, and the lantern, which had been broken, was on his arm. There was further testimony to the effect that the rules provided that, and as a matter of fact, it was decedent's duty to look after

hot boxes or any defect there might be in the running gear, such as broken drawheads, arch bars, brake rigging, or leaks in the air-hose connection, etc., and that it was the duty of a brakeman to make such an examination whenever he had an opportunity to do so. It was further shown that rule No. 119 provided that no train should leave a station without a signal from the conductor. The conductor testified that he gave no signal to the engineer to leave. The head brakeman first testified that he had no recollection of having given a signal to the engineer, but afterwards stated positively that he had not given any such signal. The engineer says that the head brakeman did give him a signal to go forward. The theory of appellee is that Long was either beneath or between the cars when the train was started, and, if so, the presumption is that he was engaged in inspecting or repairing the car, as the rules of the company required him to do, and that under these circumstances the train was negligently started forward by the engineer.

Appellee relies upon the principle enunciated by this court in Illinois Central R. R. Co. v. Cane's Admx, 90 S. W. 1061, 28 Ky. Law Rep. 1018. In that case the court used the following language: "But we perceive no reason why we should presume that he (the brakeman who was killed) was unnecessarily between the cars, or that he did not find something to be done which he considered it his duty to do. Having a right to rely upon the fidelity of the engineer, he could act with less caution than would otherwise be incumbent upon him." In that case, however, there were two eyewitnesses to the fact that the decedent was actually between the cars and that the engineer moved up against the coal cars. It will be

observed therefore that the court in that case did not indulge any presumption as to where the decedent was when the engine started. The only effect of the opinion was that there was no presumption that the decedent was unnecessarily between the cars, or that he did not find something to be done which he considered it his duty to do. In this case we may concede that it was the duty of Long to examine the brakes, rigging, and other apparatus on the car. We may further concede that the engineer negligently started the train forward. Here, then, we have negligence proven, and injury resulting in death proven. This, however, is not sufficient. In a long line of opinions, this court has recognized the rule that it is necessary for the plaintiff to prove negligence naturally resulting in the injury. Unless the proof connects the proven injury as a rational and proximate result of the proven negligence, there is nothing to submit to the jury. The absence of evidence upon any material point is as fatal to him who has the onus, as the absence of all evidence would be. C., N. O. & T. P. Ry. Co. v. Zachary's Admr, 106 S. W. 842, 32 Ky. Law Rep. 678; Hughes v. L. & N. R. R. Co., 67 S. W. 984, 23 Ky. Law Rep. 2288; Hughes v. C., N. O. & T. P. Ry. Co., 91 Ky. 526, 16 S. W. 275; Louisville Gas Co. v. Kaufman, 105 Ky. 131, 48 S. W. 434; Wintaska's Admr v L. & N. R. R. Co., 20 S. W. 819, 14 Ky. Law Rep. 579.

Does the evidence of plaintiff measure up to the requirements of the rule announced? The evidence shows that the proper way to operate the Sullivan valve is from above. On the occasion of decedent's death the ground was covered by a slight fall of snow. The accident occurred after midnight. If, under these circumstances, the decedent went in between the

third and fourth cars, while the train was in motion, for the purpose of operating the Sullivan valve, there can be no doubt that he would not be entitled to recover. We are therefore of the opinion that this whole case depends upon whether or not decedent was under or between the cars when the train was started. In discussing this question we must keep in mind the one incontrovertible fact that the Sullivan valve had been applied and the train brought to a standstill, that decedent was found under the front trucks of the third car, on which the Sullivan valve was located, and that there was no one else present who could have applied that valve. It is therefore absolutely certain that Long was not under the sixth car where he was engaged in packing the hot box, or under the third car, or any other car, when he was injured. If the train was started while he was at work under any one of the cars, he could not have operated the Sullivan valve.

We are, then, reduced to the single question: Was Long between the third and fourth cars when the train was started, or did he go in between those cars after the train was started? Counsel for appellee makes much of the physical fact of the position of Long's body; that he was found lying on his back with his head towards the engine. From this it is argued that Long would not have jumped backwards between the cars. This evidence throws but little light upon the question, for in stumbling, or falling, or being twisted under the wheels, the position of the body may have been entirely changed from what it was when decedent fell. There is therefore nothing in the fact that Long was lying upon his back with his face towards the engine, from which the inference naturally follows that he was between the cars when the

vol. 139—20

train was started. On the other hand, the position of Long's body is incontrovertible evidence of one fact: Long was found right where he was left at work. He was engaged in packing a hot box on the sixth car. He was found under the third car. If, then, he was between the cars when the train was started, he must have left the hot box which he was engaged in packing, and have gone the distance of two car lengths towards the caboose, and been at work between the third and fourth cars. Then he must have walked with and between the cars after the train was started for at least two car lengths before he was killed. Furthermore, if the attitude of the body has any bearing upon the question as contended for by appellee, he must have backed with the cars for at least two car legnths. On the other hand, if the train was started while he was at work on the hot box, and he went in between the third and fourth cars to pull the Sullivan valve as the third car reached the point where he was at work, it would not require the extraordinary feat of walking for two car lengths between two cars of a moving train. While, of course, it can never be known, exactly, under what circumstances decedent was killed, every inference logically deducible from the physical facts and circumstances connected with this case is to the effect that the train started while decedent was at work on the hot box, and, as the car holding the Sullivan valve approached the decedent, he went between the cars for the purpose of operating the Sullivan valve and thereby stop the train; and this seems to have been the view of the draftsman of the petition. At any rate, there is just as much, if not more, evidence favoring this theory than that of appellee, that the decedent was injured while at work under or be-

tween the cars. This being the case, and the burden being upon plaintiff to show that the proven negligence was the proximate cause of decedent's death, and having failed to show that decedent was under or between the cars when the train was started, we are of the opinion that appellant was entitled to a peremptory instruction.

For the reasons given the judgment is reversed, and cause remanded for a new trial consistent with this opinion.