## Lyne v. Central Trust Company of Owensboro.

(Decided February 5, 1929.)

(As Modified, on Denial of Rehearing, May 7, 1929.)

BEN D. RINGO and E. B. ANDERSON for appellant.

SANDIDGE & SANDIDGE for appellee.

OPINION OF THE COURT BY COMMISSIONER HOBSON—
Reversing.

The Central Trust Company brought this action against John L. Lyne to recover on a note executed by him to it on November 24, 1926, for $13,244.80, with interest from maturity, and secured by a pledge of 320 shares of Owensboro Wagon Company stock. Lyne answered denying the allegations of the petition, and pleading in brief these facts:

J. W. McCulloch was a stockholder and director in the trust company on January 20, 1920. He had become indebted to it for borrowed money, largely in excess of the amount which it could legally lend him. The bank examiner was soon expected, and it was arranged between him, McCulloch, and the trust company to change the form of the indebtedness, and to this end he signed and delivered to it a note for $25,000, also a note for $10,000, which the company accepted in lieu of two notes for like amounts held against McCulloch, agreeing to look solely to McCulloch for the money and to the collateral which McCulloch attached to the notes, and he delivered the notes on condition that they were to be held only temporarily and should then be returned to him, it being expressly agreed between the three that he receive no consideration and was not bound, and McCulloch then and there signed a written agreement which he delivered to him and to the bank to this effect. He also alleged that the note in suit was a renewal of the $10,000 note, which

had been renewed from time to time and the interest added until it reached the amount sued for, but all this was on the same consideration and agreement. The plaintiff filed a reply denying the allegations of the answer. Then the deposition of the cashier of the bank was taken as on cross-examination, and he disclosed the fact that the two notes, executed on January 20, were renewed when they matured and were finally paid in full on May 24, 1920; that subsequently Lyne executed to the bank, on June 30, a note for $15,000 for cash then paid to McCulloch; that when this note fell due in September $10,-000 was paid on it, and when the renewal fell due in December, 1920, $5,000 more was loaned and a renewal executed for $10,000, and this $10,000 note was renewed from time to time until it resulted in the note sued on. Lyne then filed an amended answer, which was controverted of record, in which he pleaded that the $10,000 note executed in January, 1920, was renewed from time to time with the interest added to the principal until it amounted to the sum of $13,244.80, and is the note sued on, or else it is true that he signed and delivered to the plaintiff, without any consideration therefor, another note for $10,000, and that the defendant, its officers and agents, falsely and fraudulently represented to him that this other note was a renewal of the $10,000 note executed in January, 1920, and by that fraud and misrepresentation obtained from him the note executed in December, 1920, and but for this he would not have executed that note at all or any renewal of it. He alleged that one or the other of these statements was true, but that he did not know which was true.

The proof was heard. J. W. McCulloch was in 1920 supposed to be a millionaire, but died insolvent before the trial. Lyne testified in substance as set out in his answer. The bank officials testified in substance as set out in the deposition of the cashier. At the conclusion of all the evidence, the court instructed the jury peremptorily to find for the plaintiff. Lyne appeals.

The evidence shows conclusively that the two notes executed in January were paid on May 24th. It is unnecessary therefore to determine what were the rights of the parties under these notes; for the note sued on rests on a borrowing of money long after these notes were paid. Lyne was the brother-in-law of McCulloch and worked in his office. He testified that he did not

know anything about the $15,000 note or the $5,000 note and never saw or heard of either of them. But notwithstanding this, he admits that he signed the note for $10,000, given in December, and it is undisputed that this note was for, not only the amount due on the $5,000 note, but for $5,000 on that day lent McCulloch. So that note was not without consideration. McCulloch, though he owed the $5,000, by that transaction got credit for the time of the renewal, and Lyne cannot complain of that note unless he was induced to sign it by some misrepresentation. He knew that the proceeds of the note were not credited to him but to McCulloch, and he is bound on the note, unless but for the misrepresentation he would not have executed it. If he was induced to sign it by the representation that it was a renewal of the note he had given in January, this was a material misrepresentation; for, if that note had been paid, he was released and under no obligation to the trust company. The banker denies that he made any representation, but Lyne says he did. To illustrate, Lyne makes this statement as to what the banker said to him: "He would say that Mr. McCulloch had been in and had arranged for the renewal and the interest on that note and it was all right to sign it, and the agreement was renewed and I was assured that I would be held harmless on it and it was the original $10,000 note. It occurred every time the note was renewed, and that is the only note I ever signed there in connection with Mr. McCulloch, those two."

The rule is that if there is any evidence the question is for the jury under the evidence, the question whether the note was obtained from Lyne by misrepresentation, as above stated, should have been submitted to the jury and no other question. The stock pledged for the payment of the note was the property of McCulloch.

Under the pleadings the defendant may not give evidence showing that the plaintiff's officers agreed, when he gave the original note, that plaintiff would not look to him for its payment. Barrett v. Clark, 226 Ky. 114, 9 S. W. (2d) 1091, and cases cited. McCulloch being dead, the defendant may not testify for himself as to anything said or done by McCulloch in the transaction, not in the presence of plaintiff's representative. All other questions are reserved.

Judgment reversed, and cause remanded for a new trial.