## Faulkner v. Gatliff Coal Company.

(Decided March 12, 1929.)

JOHNSON & SILER for appellant.

TYE, SILER, GILLIS & SILER for appellee.

OPINION OF THE COURT BY JUDGE LOGAN—Affirming.

W. G. Faulkner, the appellant, began work for the Gatliff Coal Company, appellee, on September 1, 1927.

About three weeks thereafter his fingers were caught by the blades of an electric suction fan and seriously injured. He brought suit, and, at the conclusion of his evidence, the trial court instructed the jury to return a verdict for appellee.

A brief statement of the facts is required. Appellee operates a coal mine. The mine is electrified, and in the spring of 1927 the company built a concrete substation about one-half mile distant from the mine. The building inclosing the machinery at this substation was about 14 by 18 feet, and it was equipped with a transformer, converter, switchboard, suction fan, wires, and such other machinery as is necessary in such a building to be used for the purpose of distributing the electric current. The appellant had one duty only, and that was to watch the switch located near the center of the room, and, when the breaker kicked out, to put it back in place. The machinery extended well around the inside of the building, although it is insisted that there was space enough between the machinery and the walls of the building to admit the passage of a person. That is not material, however, as there was an aisle running from the front or door entering the building straight through to the opposite side or end; it was at the opposite side or end—that is, away from the door—that the suction fan was located. There had been a window at that point, but the fan had been installed in the aperture intended for the window, and there is some dispute as to whether it actually extended into the building—that is, beyond the plane of the wall if it had been extended across the aperture—or whether it extended no further than the jambs of the window. Near or about the door there was a space where a man could sit down or stand and watch the breaker, and at the other end or side of the building where the fan was located was another space where the appellant might sit down and still be close to the breaker.

On the day of his injury, appellant was near the fan, seated on a stool or keg watching the breaker; it suddenly kicked out, and he arose to step over to it; as he straightened up. something struck one of his ears, which counsel for appellee say was a green bug, and, as the bug or other foreign substance struck his ear, he intuitively threw up his hand to free his ear from the foreign object, but the hand struck the blades of the fan instead of his ear, and it was in this manner that the injury was brought about.

The fan was in plain view, and its purpose was known by appellant. Appellant had no duties in connection with the fan, and he was under no duty that required his presence near it; the fan was not dangerous unless he came in contact with it; and the discharge of his duties did not require him to come in contact with the fan or to do anything which would probably bring him in such proximity to it as to endanger his safety. It was not so hot on the side of the building near the fan in the afternoon as in the part of the building near the door, and it was because it was more pleasant to sit on the *fan* side of the building than on the *door* side, that induced appellant to take up his station there on the afternoon of the injury.

Counsel for appellant make a number of arguments which in their judgment justify a reversal. They announce and discuss certain principles with which we find no fault. They say that the appellee was not under the Workmen's Compensation Act (Ky. Stats., secs. 4880-4987) although eligible to work under it, and because of its failure to operate under that act it may not avail itself of the common-law defenses of assumed risk, contributory negligence, and the fellow-servant doctrine. There is no dispute about the correctness of this position, although counsel for appellee say that the allegations in the petition, though undenied, are not sufficient to show that appellee was eligible to operate under the Workmen's Compensation Act. Technically speaking, the petition was not sufficient, but it would require an extreme technical construction of the petition to uphold the contention of appellee. The mere fact that a litigant may not rely as a defense on assumed risk, contributory negligence, or the fellow-servant doctrine does not mean that such litigant may find no escape from a judgment against it, even if he has been free from any negligence. It is incumbent on the injured party to establish by proof that his injury was caused by the negligence of the party he sues before he is entitled to recover. Counsel for appellant set out in their brief what they regard as the proven negligence in the case, and we shall consider this alleged negligence in the light of the proof in the record and in connection with the allegations in the petition. The original petition alleged that the appellee "installed one large electric fan and caused the same to be placed at a point where it was necessary for the one in discharge of his duties, to be near and close to." It was also alleged that the appellee "wrongfully, willfully, negligently and carelessly

failed to put proper guards or any guards over the said electric fan.'' It was further alleged that, by reason of the negligent installation of the fan and the failure to put proper guards or any guards around it, there was thrown off and discharged some particle or piece which struck the appellee's ear. There is the further allegation that the injuries of appellant were caused by reason of the gross carelessness and negligence of the appellee ''in not having a shield or guard over the blades of the said electric fan and by reason of the defective installation of the same.'' A consideration of the petition shows that the negligence charged is that the fan was negligently installed, and that, in addition, appellee had negligently failed to shield or guard the blades of the fan. By reason of these alleged acts of negligence, the fan was caused to throw off some particle which struck appellant on the ear, and that resulted in his throwing up his hand to protect his ear, and in so doing his hand came in contact with the blades of the fan.

Probably appellee is right in its contention that the negligence is charged to be in the installation of the fan and in the failure to use proper guards on the fan; but, it would not be unreasonable to hold that all of the allegations amount to a plea that the negligence consisted of the failure on the part of appellee to use ordinary care to furnish appellant a reasonably safe place to work. It is not necessary for us to decide that point, and we will dispose of the case the same as if the allegations in the petition clearly made the basis of the action such failure of appellee to furnish appellant a safe place in which to work.

The appellant, as his first grounds of negligence, as shown by the proof, argues that appellee placed the fan at a point where it was necessary for him to be in the performance of his duties, and in such proximity to appellant that it was a dangerous instrumentality, and that appellee knew at the time of the installation of the fan that it was probable that a person discharging the duties, imposed on appellant, would come in contact with it and receive an injury. We cannot agree with appellant in this contention. Every piece of machinery in operation in the building was dangerous. There was no duty, according to the proof, on the appellant, which required him to be near enough to the fan to come in contact with it. It was fully 8 feet away from the breaker, and the duty of appellant was at all times in connection with the

breaker. If, in putting the breaker back in place, after it kicked out, it should have been necessary for appellant to come so close to the fan that he might receive an injury as the result thereof, undoubtedly it would have been the duty of appellee to guard the fan or place it where there would be no danger from it. Appellant had no duty requiring him to work with the fan or about the fan, and, in performing his duties in connection with the breaker, he was not required to be so close to the fan as to endanger him.

Counsel for appellant say that it is the general rule that it is the positive duty of the master to exercise ordinary care to furnish his servant with reasonably safe instrumentalities with which to work, and that such duty is a continuing one. There is no doubt about that principle of law; it is entirely sound; but the fan was not an instrumentality which appellee furnished to appellant wherewith he should do his work. Counsel also say that it is the duty of the master to exercise ordinary care to furnish a reasonably safe place wherein the servant must work, and we most heartily approve that statement of the law. The place furnished must be reasonably safe under the circumstances. It was not the failure of appellee to furnish a safe place that caused the injury to appellant, but the injury was caused rather by reason of his not remaining in the place which was provided for him. Appellant relies on the case of Roy Lumber Co. v. Donnelly, 103 S. W. 255, 31 Ky. Law Rep. 601. In that case a swinging circular saw broke loose from its position and swung into the room where the workman who was injured was engaged in the performance of his duties. The saw struck him on the arm and severed it. The workman in that case had a good cause of action. He was at his place of work, and the equipment, which injured him by reason of the negligence of the owner, broke loose from its moorings and swung into the place where the workman was engaged. In this case, if the fan had broken loose from the place where it had been placed and had come into the place where appellant was at work, then the place where he was to work would have been rendered unsafe because of the invasion of the fan, and, if the invasion of the fan had been caused by the negligence of appellee, appellant would have a good cause of action. Such, however, is not the case.

The case of Webster v. Stewart Iron Works Co., 104 S. W. 708, 31 Ky. Law Rep. 1045, is relied on by appellant. In that case an iron gate fell on a workman. The workman was at the place where he ought to have been, and the gate invaded his place because of some defect which caused it to fall. He had a cause of action.

The case of Owensboro Brick & Sewer Pipe Co. v. Glenn, 106 S. W. 1195, 32 Ky. Law Rep. 803, is relied on by appellant. In that case the workman had duties to perform in connection with the feeding of a chute which carried clay to a mold. He was to keep out dry dirt as the clay passed through the chute. There was a heavy instrument which was to be lowered against the clay, upon signal, which crowded it into the chute. This instrument was lowered at a time when the workman was engaged in the performance of his duties because the signal was given in some unknown way. The injury to the employee was brought about because the signal was given at a time when he was in a place of danger. We do not think the facts in that case are applicable to the case under consideration. It is true that the court said in the opinion in that case that the negligence consisted in the arrangement of the machinery and its manner of operation, which were so that the slightest accident might endanger the employee's life. That was true in that case, as the employee had to work under that heavy instrumentality, which would certainly fall on him and destroy him if a signal was given at the wrong time. No such state of facts exists in the case under consideration. Appellant was not in a place where some instrumentality would probably invade the circle of his activities.

The case of Paducah Box & Basket Co. v. Parker, 143 Ky. 607, 136 S. W. 1012, 43 L. R. A. (N. S.) 179, is not in point. In that case an employee, a girl, was directed to go to a table and get some spools of wire. Under the table was a rapidly revolving shaft which caught her apron and caused her injury. She was at the place where she had been directed to go when her apron was caught and the place where she was required to be at the time of the injury had not been made safe.

Neither do we think the case of P. Bannon Pipe Line Co. v. Battle's Adm'r, 183 Ky. 367, 209 S. W. 4, is in point. In that case the workman in unloading clay was required to work by the side of one of the conveyors. In the discharge of his duties he inadvertently stepped with his right foot into the conveyor, and he received injuries.

The conveyor was the instrumentality that he was working with.

Before appellant should have been allowed to recover in this case, he should have shown negligence on the part of appellee, and he must have done more than that, by showing that the negligence was the proximate cause of his injury. Gatliff Coal Co. v. Powers' Adm'r, 219 Ky. 839, 294 S. W. 472; West Kentucky Coal Co. v. Smithers, 188 Ky. 224, 221 S. W. 558.

We believe it is universally recognized that, where there is no duty there can be no negligence. The duty imposed upon appellee in this case was to exercise ordinary care to furnish appellant a reasonably safe place in which to work. If that was done, no further duty towards him was imposed on appellee. The case of Gibralter Coal Mining Co. v. Nalley, 214 Ky. 431, 283 S. W. 416, is a late case announcing the rule that the employer is not liable to the employee for the injury sustained by him unless it is alleged and proven that the company was guilty of negligence directly contributing to the infliction of the injury. It was there announced that, if the negligence of the employer did not proximately contribute to the bringing about of the injury, the employee was not entitled to a judgment against the employer. The facts in that case show that the coal company was not operating under the Workmen's Compensation Act. That case seems to be in point, and it would be difficult, if not impossible, to distinguish it from the case under consideration.

We have given to this case that consideration which it deserves, and, giving to appellant the most favorable consideration and resolving doubts in his behalf, still we have reached the conclusion that the trial court did not err in directing the jury to return a verdict for appellee.

Judgment affirmed.