## Highsplint Coal Company v. Palmer's Administrator.

(Decided October 11, 1929.)

TYE, SILER, GILLIS & SILER and T. E. MAHAN for appellant.

G. G. RAWLINGS, F. L. HUFF and R. L. POPE for appellee.

OPINION OF THE COURT BY JUDGE REES—Reversing.

Henry Palmer received injuries which resulted in his death while employed by appellant, Highsplint Coal Company. Appellant operates a coal mine in Harlan county, and, though employing the requisite number of men, was not operating under the Workmen's Compensation Act (Ky. Stats., sec. 4880 et seq., as amended) at the time Palmer was injured. Palmer was an operator of an electric coal cutting machine, and M. M. Waldrop was his assistant. At the time he was injured, Palmer was operating an electric coal-cutting machine known as a Sul-

livan Six, and had been engaged in operating such a machine for a number of years, and this particular machine for several months.

The machine is used to undercut the coal in a room in the mine, and is then loaded on a truck that runs on rails, and transported to another room in the mine, where the coal is to be cut. To load the machine on the truck, an inclined track is provided, and a chain is fastened to the machine by a fork or hook on the machine, and by its own power the machine is drawn up the incline onto the truck. The truck is propelled by electricity from place to place in the mine on tracks. The tracks are laid in the various entries upon which the rooms open. The Sullivan machine has three feeds, sometimes referred to in the record as speeds or gears—slow, neutral, and fast. The machine is operated in slow, neutral, and fast feed by means of a clutch lever, a notch or slot being provided for each feed in which the lever is supposed to rest. In the lever is a coil spring, which holds it in position. The clutch lever is placed in the low-feed notch when coal is being cut, and the high-feed notch when it is being loaded or unloaded. When it is being loaded on the truck, a large chain fastened to the machine is attached to the truck. the clutch is placed in high feed, and the machine is pulled along the chain up the incline onto the truck. When the machine is loaded on the truck, and ready to be transported to another point in the mine, the clutch lever is placed in neutral, and by means of a control lever the power is applied and the truck is propelled along the tracks at a speed of three or four miles an hour. This is known as tramming.

On the occasion when Palmer was injured, he and his helper had finished undercutting the coal in a room, had loaded the machine on a truck, and were tramming to another room, in which they intended to undercut the coal. The coal-cutting machine has a cutter bar, which is about 6 feet long and 1½ feet wide, and which extends out in front of the truck when the machine is loaded. Palmer was sitting sideways on this cutter bar, within reach of the controller which operated the truck. He had one hand on the controller, and with the other hand he was holding a nip against the trolley wire, which provided a connection to conduct the electric current to the motor on the truck. Waldrop was seated on the cutter bar, with his back to Palmer. After they had proceeded down one of the entries several hundred feet, Waldrop ob-

served that the front end of the truck suddenly raised up and the truck stopped. He got off, and heard Palmer calling for help. He found Palmer under the truck, with one of his legs under one of the front wheels. Palmer's leg was severely crushed, and he died from the effects of the injury on the following day.

By this action Palmer's administrator seeks to recover damages for Palmer's death, because of alleged negligence of the coal company in furnishing the decedent a defective machine. On the trial of the case the jury returned a verdict for plaintiff in the sum of $6,000, and from the judgment thereon the defendant has appealed.

The administrator first filed a petition, in which he alleged that the car on which Palmer was riding ran against a defective part of the track in the mine, and, by reason of the defective track and defects in the machine, he was thrown under the car and injured. The issues were completed and a trial had. At the conclusion of the evidence for the plaintiff, and after the defendant had moved the court to peremptorily instruct the jury to find for it, the plaintiff moved the court to dismiss the action without prejudice, which was done. This action was then brought.

In his petition the plaintiff alleged that, while Henry Palmer was transporting the coal-cutting machine from one portion of the mine to another, the machine on which he was riding suddenly and unexpectedly wrecked, and caused decedent to be thrown under the car. It was then alleged that the defendant negligently permitted the coal-cutting machine to fall into a state of bad repair, and that its defective condition was the proximate cause of the accident which resulted in Palmer's death.

In paraghaph 1 of the answer defendant traversed the material allegations of the petition. In the second paragraph of the answer it is alleged that Palmer was himself guilty of negligence which caused and brought about his death, and that but for such negligence he would not have been injured or killed. In the third paragraph of the answer it is alleged that Palmer knew of the defects of the machine, if any existed, and that he was in sole charge and control of the machine, and that it was his duty to inspect the machine and cause any defects to be repaired.

The court sustained a demurrer to paragraphs 2 and 3 of the answer, and of this appellant complains. It is

insisted that these paragraphs of the answer did not plead as defenses contributory negligence and assumed risk, but constituted affirmative pleas of facts showing that the defendant was not responsible for the death of Palmer. The court properly sustained the demurrer to paragraphs 2. and 3 of the answer, since they amounted to nothing more than pleas of contributory negligence and assumed risk, and, having failed to operate under the provisions of the Workmen's Compensation Act, the defendant was deprived of these defenses. If the accident was caused solely by some act of the injured employe, this could be shown under the general issue, and would excuse the defendant, if it was guilty of no negligence.

The chief ground urged for reversal is that the trial court erred in failing to sustain defendant's motion for a peremptory instruction in its favor. The evidence discloses and the defendant admits that one prong of a hook, fastened to the rear of the machine and used for the purpose of resting thereon, the chain attached to the front part of the machine, was missing. This chain was about 45 feet long and weighed approximately 200 pounds. It was plaintiff's theory—or, to be more precise, it was one of his theories—that this chain fell from the machine and onto the track in front of the truck wheels, and that when the wheels struck the chain Palmer was knocked off the machine and under the truck, and that the chain fell by reason of one prong of this supporting fork being broken. Waldrop testified that, after he discovered Palmer under the truck, the clutch lever was in fast feed, and that the chain had come off one prong of the fork over which it had been thrown, and part of it was on the ground in front of the truck. It was also plaintiff's theory that the spring was missing from the clutch lever, and this permitted the clutch lever to jump from neutral to fast speed, which started the heavy chain to unwind, and caused the machine to jerk and throw Palmer under the front wheel of the truck. Waldrop testified that the clutch lever was in neutral, that they had trammed several hundred feet, and that the first intimation he had of any trouble was when the front end of the truck raised up and the truck stopped.

Jim Brooks testified that he used the same machine about two weeks after Palmer was injured, and that the spring was then missing from the clutch lever. Ralph Dizney, an electrician for the defendant, and several of

his assistants, testified that on the morning after the accident, and before the machine had been used, it was taken to the shop and thoroughly inspected; that the spring was then in the clutch lever, and that no defects were discovered that could have caused the accident. The machine was used after the accident, and after its inspection, and before it was used by Brooks.

Waldrop was the only person present when the accident occurred. The plaintiff introduced as expert witnesses a number of persons who were familiar with the operation of a Sullivan Six electric coal-cutting machine, who testified that, if the clutch lever slipped from neutral into high feed while tramming, the heavy chain would be pulled off the fork supporting it at the rear of the machine, or the fork would be broken, and in either event the mechine would probably be jarred or jerked. The hypothetical question propounded to these witnesses assumed that the lever slipped from neutral into high feed before Palmer fell from the truck. Waldrop did not so testify. All that he said was that the lever was in the high feed slot after the accident. All of the witnesses say there are a number of causes that might account for the slipping of the lever. It may slip from one feed to another because of a missing spring or vibration. The collection of dirt and grease in the slots would also cause the lever to slip. If Palmer fell from the truck, and one of the front wheels struck his leg, the resulting jar and vibration might have caused the lever to slip out of the neutral slot. If grease and dirt were permitted to accumulate in the slots, the operator alone was responsible, since he had full charge and control of the machine.

The cause of Palmer's fall and injury is a matter of pure speculation. He may have fallen, either before or after the clutch lever slipped into high feed; the slipping of the lever may have resulted from a defect in the machine, or from other causes for which the defendant would not be responsible. From the evidence it is impossible to more than speculate as to the cause of Palmer's fall. Although the defendant was deprived of the defenses of contributory negligence and assumed risk, the burden is upon the plaintiff to show that defendant was negligent, and that its negligence was the proximate cause of the injury. If the negligence of the defendant did not proximately contribute to the bringing about of the injury of decedent, plaintiff has no cause of action.

Faulkner v. Gatliff Coal Co., 228 Ky. 379, 15 S. W. (2d) 236.

It is plaintiff's theory that the machine fell into fast feed because of the absence of the spring in the clutch lever, and that the feed chain was pulled from the hook and fell in front of the truck, or between the sprocket chain and the wheel of the truck, and that the front end of the truck raised up, causing Palmer to fall. This theory is necessarily based on surmise and speculation. Other theories as to the cause of the accident, equally plausible and wholly consonant with the absence of negligence on the part of defendant, might be deduced from the evidence. As said in Chesapeake & O. R. Co. v. Crider, 199 Ky. 60, 250 S. W. 499, 501, "The rights of litigants in courts of justice are not determined by guesswork, surmise, or speculation. There must either be direct evidence authorizing a finding of fact, or a network of circumstantial evidence, based upon facts which will authorize a finding by a court or a juror without indulgence in mere speculation or surmise."

And in Hearell, Adm'r v. Illinois Cent. R. Co. et al., 185 Ky. 41, 213 S. W. 561, 562, it was said: "Where it is sought to recover damages for negligence or wrongful acts, there must be some evidence to show that deceased lost his life through the negligence of the defendant, and this evidence must be sufficient to charge the defendant with a breach of duty, and recovery cannot be had on mere surmises or speculation as to how the injury complained of happened, nor will it be presumed that the defendant was guilty of actionable negligence if the injury may as reasonably be attributed to a cause that will excuse the defendant as to a cause that will subject it to liability."

And further: "Courts are not authorized and juries should not be permitted to indulge in speculation or to guess as to the cause of an accident. There must be some tangible evidence from which it can be fairly said the accident was brought about, and where the evidence is so unsatisfactory as to require the court or jury to resort to surmises or speculations as to how the injury occurred, there will be no presumption of negligence."

The rule announced in the above cases is thoroughly established in this state.

Nor is the doctrine of res ipsa loquitur applicable here. As said in Louisville & N. R. Co. v. Allen's Adm'r, 174 Ky. 736, 192 S. W. 863, 865, that doctrine is only ap-

plicable between master and servant "where the evidence shows that the accident is necessarily the result of defective conditions and can be explained upon no other reasonable hypothesis, circumstances indicating carelessness on the part of defendant will produce such a condition as to authorize the submission of the case to the jury."

We conclude that the evidence was insufficient to warrant submission of the case to the jury. There was no competent evidence showing that the machine was defective. One witness said that he heard the decedent, shortly before the accident, inform the man in charge of repair work that the machine was in need of repairs, but he did not describe the nature of the needed repairs. Plaintiff assumes that they included the replacing of the missing spring, but this again is mere surmise. Even if the machine had been defective in the respects claimed, it is no more probable that its defective condition was the proximate cause of the accident that resulted in Palmer's death than many other causes that might be assumed from the evidence. The burden was on the plaintiff to prove, not only that the machine was defective in some manner, but that the defect was the proximate cause of the accident. Considering the evidence in the most favorable light to plaintiff, the jury could only guess as to the cause of Palmer's fall and resulting injury. If the evidence is substantially the same on another trial, the jury should be peremptorily instructed to find for the defendant. All other questions are reserved.

Judgment is reversed, with directions to grant appellant a new trial and for further proceedings consistent herewith.