## High Splint Coal Company v. Bailey's Administrator.

(Decided March 24, 1931.)

TYE, SILER, GILLIS & SILER and T. E. MAHAN for appellant.

J. C. BAKER and POPE & HUFF, R. L. POPE, and ROBERT F. VAUGHAN for appellee.

Opinion of the Court by Judge Clay—Reversing.

While in the employ of the High Splint Coal Company, Enoch Bailey received injuries resulting in his death. This action by his administrator, the Citizens' National Bank of Harlan, to recover for his death resulted in a verdict and judgment for $5,000. The coal company appeals.

The facts are these: At the time of the accident the company was operating two inclines, one permanent and the other temporary. For five or six years Bailey had been the track foreman and was engaged in maintaining the permanent or main incline and track. On the occasion of the accident he and his crew were engaged in grading a tram road from what is known as the low splint opening to connect with the other incline. Bailey's working place was about 100 feet to the right of the foot of the temporary incline. The men were allowed 30 minutes in which to eat their dinner. Shortly after the dinner hour Bailey and five or six other men went to a pile of steel rails located at the foot of the temporary incline and began to eat their dinner. This place was about 100 feet to the left of their working place. Three men were engaged in the operation of the incline. One of them worked at the knuckle. Another, whose duty it was to unhook the ropes from the loaded cars and hook them to the empty cars to be taken up the incline, worked at the foot of the incline. A third man acted as flagman. He says that before the accident he saw Bailey and the other men sitting on a pile of rails eating their lunch. About half way up the incline was a switch. Sometimes pieces of coal got in the switch and it was necessary to remove them before a car could proceed safely up the incline. Just prior to the accident two of the employees saw a piece of coal in the switch. The car going up was stopped on the incline, and one of the employees removed the coal. The car was attached to a new three-quarter

inch steel rope which had been in use for only about a week. It was put on to replace a rope which had been in use for about six months. The old rope was attached to a clevis by two clamps. On the new rope there were three clamps which were screwed so tightly that the rope was indented. The fastening was inspected on each trip, and on the next trip before the accident it was examined and found tight and in good condition. As the car was started after the coal was removed from the switch the rope came loose from its fastening and the car went down the incline, going in the direction of the steel rails on which Bailey and others were sitting. In two or three seconds it reached the bottom, and Bailey, who endeavored to get out of the way, was struck and received injuries from which he died. After the accident it was disclosed that the end of the rope had pulled through the clamps, and that there was no knot or other contrivance on the end of the rope to prevent it slipping.

Though it be true that the defenses of contributory negligence and assumed risk were not available inasmuch as appellant, though coming within its provisions, had not elected to operate under the Workmen's Compensation Act (Ky. Stats., sec 4880 et seq.), it was nevertheless necessary for appellee to show that Bailey's death was due to some act of negligence on the part of the coal company. Perkins-Harlan Coal Company v. Mercer, 235 Ky. 618, 32 S. W. (2d) 14. Liability was predicated on the coal company's failure to use ordinary care to furnish Bailey a reasonably safe place for work, and that was the theory on which the case was submitted to the jury. In support of this position it is argued that the safe place doctrine should apply, not only because Bailey was still in the service while eating his dinner, but on the further ground that his presence in a place of danger was known to the employees operating the incline and no warning of the danger was given. Whether, if Bailey's work had required him to be at the foot of the incline, the evidence would have been sufficient to take the case to the jury, in view of the rule that, as between master and servant, there must be other evidence of the master's negligence in addition to the happening of the accident, Stephens v. Kitchen Lumber Co., 222 Ky. 736, 2 S. W. (2d) 374, we deem it unnecessary to determine.

The case, not arising under the Workmen's Compensation Act, turns on whether Bailey's situation was such that the safe place doctrine applied. The case is not one where an employee was injured while going along a pathway provided by the master or customarily used by the employees. It is not a case where the injury occurred at a restaurant, or a particular place set apart for eating purposes. It is not a case where it had been the custom for the employees to use a particular place for eating purposes with the knowledge and acquiescence of the master. On the contrary, the evidence shows that the first time the rails were used for that purpose was on the occasion of the accident. The rails were at a place some distance to the left of where Bailey and the other men were at work. In going there for the purpose of eating his lunch, Bailey acted for his own convenience, and was not at a place where he was required or expected to be in the performance of his work. Where that is the situation, the uniform rule of this court is that the safe place doctrine does not apply. Faulkner v. Gatliff Coal Co., 228 Ky. 379, 15 S. W. (2d) 236; Shadoan's Adm'r v. Cincinnati, N. O. & T. P. R. Co., 82 S. W. 567, 26 Ky. Law Rep. 828. Not only so, but it would be going to an extreme to hold that the coal company was under a duty to use ordinary care to see that the hoisting appliances were in a reasonably safe condition for the protection of one not engaged in work, but merely sitting at the foot of the incline.

But the point is made that the employees on the incline were negligent in not warning Bailey of the danger. It is clear from the evidence that there was no time for warning after the rope became unfastened. Prior to the accident there was no known danger and nothing to indicate to the employees that the accident would occur. The situation was simply one where there was a possibility of danger, and this possibility was as well known to Bailey, who had worked at an incline for several years, as it was to the employees on the incline. We therefore conclude that the employees were under no duty to warn Bailey of the danger.

It follows from what has been said that appellant's motion for a directed verdict should have been sustained.

Judgment reversed, and cause remanded for a new trial consistent with this opinion.