## United States Fidelity & Guaranty Company v. Antle.

(Decided May 19, 1931.)

WADE H. LAIL and HANSON PETERSON for appellant.

H. C. FORD and SWINFORD & SWINFORD for appellee.

OPINION OF THE COURT BY JUDGE RICHARDSON—
Affirming.

This appeal brings here for review a trial had before a jury, whereby the appellee as an employee of appellant recovered $2,000 of it, for a personal injury alleged to have been sustained by him while engaged in road construction. Dorman, O'Hara & Sable, a firm composed of J. R. Dorman, Pete O'Hara, and George M. Sable, entered into a contract with the state highway commission to construct six miles of highway in Harrison county, Ky., from Cynthiana to Oddville. The firm sublet the contract to Mills & Conley, a firm composed of M. M. Mills, O. E. Mills, and J. J. Conley. The United States Fidelity & Guaranty Company, the appellant, entered into a bond with Dorman, O'Hara & Sable, wherby it became surety of Mills & Conley for the sum of $5,000 for the faithful performance of its contract to construct the road. Directly after the firm of Dorman, O'Hara & Sable so sublet the contract, the firm of Mills & Conley began the construction of the road, and continued work until some time in July, 1928, when they became so financially embarrassed they were unable to carry it on. A foreclosure proceeding was instituted against the firm, and its property used in the road construction was thereby taken from it. The firm of Dorman, O'Hara & Sable notified the United States Fidelity & Guaranty Company of the condition of the business affairs of Mills & Conley. Acting in accordance to this notice and in pursuance to section 3 of its bond, on the 21st day of July, 1928, the United States Fidelity & Guaranty Company obtained from the firm of Mills & Conley a written contract, signed by it, whereby it assigned and transferred to appellant all money due or owing, or which might thereafter become due or owing, all claims, demands, choses in action, and causes

of action of whatsoever kind and nature which the firm had or might thereafter have against the firm of Dorman, O'Hara & Sable arising out of the contract between the two firms, for work to be done in connection with the construction of that particular road. It was further provided in the contract that if the firm of Mills & Conley should fail in any or all of the conditions of the contract to such an extent that its rights thereunder should be in whole or in part forfeited, then the United States Fidelity & Guaranty Company shall have the privilege to assume the contract and sublet or complete it, "whichever it may elect." Prior to April, 1929, it is claimed that the United States Fidelity & Guaranty Company, by its agents, took charge of the road construction and completed it. The appellee was an employee of Mills & Conley at the time, and he continued as an employee of the United States Fidelity & Guaranty Company and engaged in operating, with its other employees, a grader, when on the 19th of April, 1929, by reason of their negligence, he sustained serious injury, namely, one arm and both legs were broken.

For his cause of action he alleged that the machinery turned over by reason of its negligent operation by Crump and Jenkins, the other employees in charge thereof, and by "reason of its being out of repair and unfit for use," which facts were known to appellant and its employees, or could have been known by them, by the exercise of ordinary care and unknown to him.

To prevent his recovery, the appellant traversed his petition, relied on its contract with Mills & Conley, and his contributory negligence. In avoidance of the defense, the appellee alleged in his reply that even if the contract was entered into by it and Mills & Conley, that he was in fact an employee of the appellant at the time of his injury, and not an employee of the firm of Mills & Conley. In avoidance of its plea of contributory negligence it was alleged in the reply that appellant was eligible, but failed to and did not avail itself of the provisions of the Workmen's Compensation Act (Ky. Stats., secs. 4880-4987), and that by reason thereof it was precluded from relying on contributory negligence.

A trial by jury resulted in a verdict in favor of the appellee for $2,000; a judgment was rendered thereon, from which this appeal is prosecuted.

At the conclusion of the evidence in behalf of appellee, the appellant entered its motion for a peremptory

instruction, which the court refused to give. It renewed its motion for a peremptory instruction at the conclusion of all the evidence, which the court again refused to give. The appellant now insists: (1) The court erred in refusing the peremptory instruction, (a) because the evidence fails to show the appellant had in fact taken over the road construction, and (b) the evidence fails to show negligence in any respect; (2) the court erred in permitting Sable to testify as to the statements made to him by Hastings and Lysaght; (3) in refusing to give the instruction offered by it marked "A."

As to its first contention, it is plain that on the material and vital issue of first importance, i. e., had the appellant in fact taken over the road construction, and was appellee working for it? there was sufficient evidence on this issue to authorize the submission of the case to the jury. According to the evidence, notwithstanding the provisions in the written contract between the firm of Mills & Conley and the appellant, dated July 21, 1928, it, by its representative, Mr. Lysaght, retained Jenkins, who was on the job and actually controlling and operating the machinery at the time appellee was injured. He secured from Mr. Sable, the owner, the machinery which was used continuously from the date of the July contract until the job was completed, and by the operation of which the appellee received his injury. The evidence satisfactorily establishes that the appellant did more than merely finance Mills & Conley. It placed Conley on a salary of $100 a month, required him to keep the time men were engaged in the work, including appellee, and to transmit the payrolls to it; mailed checks payable to the employees actually engaged in the work, to him to be delivered by him to them. It exercised the power to furnish the machinery used by borrowing it from Sable, and retained Jenkins, a skilled employee, to operate it, and gave directions to and was superintending the work generally. Conley was subject to its orders. He was merely its servant. "Servant" is defined by Webster's New International Dictionary as:

"Any person employed by another and subject in his employment to his employer's directions and control; An agent who is subject to the direction and control of his principal. 'Servant' is defined in some Codes of the States of the United States as 'one who is employed to render personal service to his employer, otherwise than the pursuit of an inde-

pendent calling, and who in such service remains entirely under the control and direction of the latter, who is called his master.' "

In Bowen v. Gradison Construction Co., 236 Ky. 270, 32 S. W. (2d) 1014, 1017, the language is:

"The power of an employer to termininate the employment at any time is incompatible with the full control of the work that is usually enjoyed by an independent contractor. The master is he who can say to the servant, 'Go' and he goeth. 'Come' and he cometh, or 'Do this' and he doeth it. Who has power to say. 'Do this first,' 'Do it this way.' 'Do not do that,' 'Hurry up,' or otherwise direct the detail of the manner of its doing? Whose work was was being done? When we find that party, we have found the master. 'No single fact is more conclusive as to the effect of the contract of employment, perhaps, than the unrestricted right of the employer to end the particular service whenever he chooses, without regard to the final result of the work itself.' Cockran v. Rice, 26 S. D. 393, 397, 128 N. W. 583, 585, Ann Cas. 1913B, 570. In Messmer v. Bell, etc., 133 Ky. 19, 117 S. W. 346, 348, 19 Ann. Cas. 1, we said: 'The power to discharge has been regarded as the test by which to determine whether the relation of master and servant exists.' "

Even if Conley was not a servant of the appellant during the progress of the work within the definition supra, Lysaght was, and is admitted to have been its agent or employee. The authority exercised by him, as detailed by Sable and Jenkins, was not only sufficient to bring this case as to this issue within the scintilla rule, but to sustain the verdict.

The appellant contends that there is a total failure upon the part of appellee to show that his injury resulted from negligence. To sustain this, it cites L. & N. R. R. Co. v. Fields, 197 Ky. 138, 246 S. W. 130; 22 C. J. sec. 440, p. 367. In the Fields case the plaintiff's injury was claimed to have resulted from a cinder in his eye caused by the conductor opening and leaving open the door of the coach in which he was riding, and which was not a vestibule. The evidence showed that many of the car windows were open at the time, and we held that upon the evidence it was merely a matter of speculation and

doubt as to whether his injury resulted from negligence. This case cites L. & N. R. R. Co. v. Long's Adm'r. 139 Ky. 299, 117 S. W. 359; Caldwell's Adm'r v. C. & O. R. R. Co., 155 Ky. 609, 160 S. W. 158; Gayle's Adm'r v. L. & N. R. R. Co., 163 Ky. 459, 173 S. W. 1113; C. N. O. & T. P. R. R. Co. v. Frogg's Adm'r 167 Ky. 6, 179 S. W. 1062; Johnson v. M. & O. R. R. Co., 178 Ky. 108, 198 S. W. 538. In the Johnson, Caldwell, and Frogg cases, the body of deceased was found near the railroad tracks. In each of them it was held there was no proof of negligence on the part of the railroad company. In the Gayle case it was claimed that decedent was jerked from the train and killed. The evidence failed to show whether his death was caused by the jerk of the train or his falling from it. In the Long case the deceased was a railway brakeman. His body was found beside the track. There was failure of proof that the starting of the train was the proximate cause of his death. A peremptory instruction was ordered in each of these cases, and the rule restated that negligence cannot be presumed, but must be proven. In the present one, it is shown that the road where the machinery was being operated at the time appellee received his injury was not wide enough for the machinery to turn the dirt into the middle of the road. In making the turn so as to start on the same side of the road, if the grader was turned to the left it cut the front wheel to the right and made the grader run forward instead of backward. If the turn was not made correctly, the tongue of the implement came back to the side, making the machinery run backwards. The tongue to which the tractor was hooked was so arranged it could turn more rapidly than the wheels of the grader. In making the turn the grader would turn without making the front wheels of the tractor turn. The tongue controls the wheels, and the wheels are controlled by a steering rod. Crump, who operated the front wheels by turning them a little to the right, would made a large circle with the front wheels. If he failed to make a large circle with the front wheels, it would cause the tractor to pull the grader backwards. He failed to "cut the wheels in the proper manner"; "they were held straight" "the grader run backwards"; "the blade caught on the road, picked up the weight of the grader, and turned it over into a ditch," throwing appellee off of the grader which he was assisting in operating, thereby injuring him. "Either a collar or gear in the end of the cable was necessary." The

machinery was not so equipped. "After it got loose, without the collar or gear, there was nothing to hold it."

The evidence was sufficient to bring this case as to this issue within the scintilla rule, and to sustain the verdict as to the issue of negligence. It is the jury's peculiar province to weight the testimony. Jennings v. Fain, 226 Ky. 290, 10 S. W. (2d) 1101. It must measure the probative value of the evidence. Terrell v. Sou. Ry. Co., 225 Ky. 645, 9 S. W. (2d) 993. If there is any evidence tending to sustain plaintiff's cause of action, it is proper to submit the issue to the jury. L. & N. R. R. Co. v. Rowland's Adm'r 227 Ky. 841, 14 S. W. (2d) 174; Lyne v. Central Trust Co., 228 Ky. 802, 16 S. W. (2d) 452.

In measuring evidence for the purpose of applying the scintilla rule of law, it must be construed as favorable for the plaintiff as is reasonable, and all logical inferences drawn therefrom. L. & N. R. R. Co. v. Crockett's Adm'r, 232 Ky. 726, 24 S. W. (2d) 580. Whether appellee was an employee of appellant as well as to whether he was injured by its negligence, and as to whether the facts proven are sufficient to establish either issue, were questions for the jury, where the court is unable to say there is room for honest differences. White's Adm'r v. Ky. Public Elevator Co., 186 Ky. 91, 216 S. W. 837. If the evidence heard by the jury substantially sustains the allegations of the petition, it is sufficient. Park Circuit & Realty Co. v. Coulter, 233 Ky. 1, 24 S. W. (2d) 942. It cannot be said in this case that as to whose servant he was at the time he was injured or how the appellee was injured is a mere matter of surmise. Highsplit Coal Co. v. Palmer's Adm'r, 231 Ky. 24, 20 S. W. (2d) 1020.

"Our duty goes no further than to determine whether there was evidence to support the verdict, and our decision of that question is not to be controlled by our opinion as to whether the verdict is in accordance with or against the weight of the evidence." L. & N. R. R. Co. v. Eckman, 137 Ky. 331, 125 S. W. 729, 731; I. C. R. R. Co. v. Ruoff, 141 Ky. 623, 133 S. W. 553.

It is most earnestly insisted by appellant that the statements of Hastings and Lysaght made to Sable, and as narrated by him over the objections of appellant, are incompetent. If the case is narrowed to, and viewed exclusively by, the provisions of the written contract

executed in July by Mills & Conley to appellant, and all other proven facts are excluded, there is some basis for urging the statements made to him by Lysaght and Hastings are incompetent. The bills for the material purchased and used after this contract was entered into, were in the name of Mills & Conley, and, in form, are in keeping with the expressed provisions of the contract. The acts and conduct of appellant and its representatives subsequent to the date of the July contract should be considered and given weight in determining the competency of this evidence. The firm of Mills & Conley was under contract to the firm of Dorman, O'Hara & Sable to construct the road. The July contract between Mills & Conley and the appellant assigned and transferred to the appellant the proceeds of the contract of Mills & Conley with Sable's firm. Therefore, Sable and his firm may be regarded as parties to, and interested in, the transaction. He was in the active superintendency of his firm's business in connection with this road construction. Hastings and Lysaght were active agents of the appellant and superintending its business in connection therewith. It was receiving the proceeds of his firm's contract with Mills & Conley. At the time the statements complained of were made by them to Sable, they were acting in line, and within the scope of their apparent authority and in furtherance of the business of appellant. The statements of Hastings complained of were made by him to Sable at the time he delivered to Sable the July contract between Mills & Conley and the appellant, and those of Lysaght were made at the time he secured from Sable the machinery desired to be, and which was actually, used in the road construction in which all parties were interested. Their statements so made by them at the time and under those circumstances were a part of the transaction in which they were at the time engaged for the benefit of appellant's business. The appellant received the benefit of the machinery and the delivery of the contract to Sable by Lysaght and Hastings, their statements so made were part of the res gestae, and as such were admissible. Wm. Craig's Adm'x v. Ky. Utilities Co., 183 Ky. 274, 209 S. W. 33; White Construction Co. v. Brooks, 222 Ky. 621, 1 S. W. (2d) 1076. Their respective statements as testified to by Sable do not fall within the rule that, ''An agent's statements after the close of the transaction as to what had occurred are inadmissible.'' Black Mountain Corpora-

tion v. Thomas, 218 Ky. 497, 291 S. W. 737; Powers v. Gatliff Coal Co., 228 Ky. 5, 14 S. W. (2d) 216; C. N. O. & T. P. Ry. Co. v. Gilreath's Adm'r, 228 Ky. 385, 15 S. W. (2d) 267.

It appears from the bill of exceptions that the court gave to the jury instructions 1, 2, 3, 4, 5, and 6. An examination of the bill of exceptions discloses the presence of instructions 1, 2, 3, 5, and 6, but No. 4 is not found in it. There appears however, in the clerk's transcript, instructions 1, 2, 3, 5, and 6 as they appear in the bill of exceptions. A copy of an instruction purporting to be No. 4 is in the clerk's transcript. It is not authenticated or identified as instruction No. 4 which the bill of exceptions shows was given by the court to the jury. Its absence from the bill of exceptions precludes us from considering it as the one given by the court. Pennyroyal Fair Ass'n v. Hite, 195 Ky. 732, 243 S. W. 1046; Cotton States Life Ins. Co. v. Spencer, 220 Ky. 536, 295 S. W. 861; Beaver Dam Coal Co. v. Daniel, 227 Ky. 423, 13 S. W. (2d) 254; Nave v. Riley, 146 Ky. 276, 142 S. W. 388. However, we have examined instruction No. 4 as it appears in the clerk's record. It in substance directed the jury that unless it believed from the evidence that appellant had taken over the contract between the firm of Mills & Conley and Dorman, O'Hara & Sable and was carrying on that construction work, and that plaintiff was an employee of the defendant, United States Fidelity & Guaranty Company, in the operation of the grader and subject to the orders and control of this company, the law is for the appellant and the jury will so find. The appellant offered instruction A, which substantially directed the jury that if it believed from the evidence that by appellant's transactions with the firm of Mills & Conley, it was advancing money to that firm with which to complete the contract and was charging same against the sums assigned to it by the assignment of July 21, 1928, and that the firm of Mills & Conley was the contractor in charge of the building of the road at the time of appellee's injury, to find for the appellant.

Reading the instructions as given by the court, and assuming that instruction No. 4 as it appears in the clerk's transcript was given to the jury, instruction No. A offered by the appellant, if given to the jury, would merely submit in another form an issue already submitted by the instructions given by the court. The instructions as given by the court required the jury, before it

could return a verdict for appellee, to believe from the evidence that the appellant was by its agents and employees actually engaged in using and operating the road grader, and that appellee was in its employment at the time he received his injury. Under the instructions as given by the court, if the jury did not believe from the evidence that the appellant was engaged in the road construction but that the firm of Mills & Conley was, and that appellee was in its employment, it was required to return a verdict for appellant.

On the whole case it appears that the appellant has had a fair and impartial trial at the hands of the jury, under proper instructions. It was peculiarly the province of the jury to determine the facts and to fix the amount of the appellee's recovery. We are not convinced that the verdict of the jury should be disturbed.

Wherefore the judgment is affirmed.