## Poli's Adm'r v. Cloversplint Coal Co. et al.

September 23, 1947.

James S. Forester, Judge.

Astor Hogg for appellant.

J. B. Carter and Sampson & Sampson for appellees.

OPINION OF THE COURT BY JUDGE DAWSON—Affirming.

On December 13, 1945, Angelo Poli, an employee of the appellees was killed instantly by a fall of slate in appellees' mine. There were no actual eyewitnesses to the accident, but the body was found in what is described by the witnesses as butt-off No. 2 in room five of the mine.

At the time of the accident appellees, though employing a sufficient number of employees to do so, were not operating under the provisions of the Workmen's Compensation Act, and the administrator for the estate of the decedent brought this action alleging that appellees negligently failed to furnish decedent a reasonably safe place to work. The defenses set out in KRS 342.410 not being available, the appellees, in effect, merely denied the allegations of the petition and alleged that death was caused by the sole neglect of the decedent.

In order to get a clear picture of the location of the accident it is necessary to describe briefly the mining operation in which decedent was engaged at the time of his death. The record shows that in the process of min-

ing an entry is driven, along which a track is laid. About every 70 feet along the entry a room is turned. A room is ordinarily about 260 feet deep. When the coal has been removed from this room a smaller room, known as a butt-off, is driven into a pillar of coal. A pillar is the block of coal between two adjacent rooms. At the time of his death the decedent was engaged in the work of mining coal from a butt-off. A butt-off is usually about 20 feet wide. When the coal has been removed from a room the miners start driving butt-off No. 1, and after butt-off No. 1 is finished they start on butt-off No. 2. When butt-off No. 2 is finished butt-off No. 3 is started, and so on.

It appears from the evidence that butt-off No. 1 from room five had been completed and abandoned and that butt-off No. 2 had been likewise completed and abandoned, this work having been done entirely by the decedent. Butt-off No. 2 had been completed and abandoned by the decedent four days before the accident, and decedent had been working in butt-off No. 3 which the evidence indicates was to be the last butt-off from room five.

On the night before the accident appellees' foreman caused the roof supports to be removed from butt-off No. 1, and it is claimed that this caused the roof of butt-off No. 2 to fall. The supports in butt-off No. 2 were not removed. According to appellees' superintendent a rule of the company prohibits a miner from entering an abandoned butt-off, although one witness for the administrator states that it is customary for miners to visit various places in a room, including butt-offs, during the hours they are engaged in mining coal.

It is conclusively shown that decedent was assigned to butt-off No. 3, and of course since the accident occurred in butt-off No. 2, which had been abandoned four days before, he was not in the place his duties required him to be. The place where he was assigned to work is some 57 feet from the place where the accident happened. There was no testimony introduced which would indicate any reason for decedent being in butt-off No. 2 at a time when he was supposed to be working in butt-off No. 3, and the appellees, of course, contend that under these circumstances there is no liability. So far as the

record shows no one saw decedent go into butt-off No. 2, no one was present at the time the slate or rock fell from the roof of the mine, and no one testifies as to the exact manner in which the decedent met his death.

The duty of a master to furnish a reasonably safe place to work applies only to the place where the employee is required to be for the purpose of performing his duty, and in order that a master be held liable to a servant for a breach of duty in this respect it must appear that the breach was the violation of a duty that the master owed to the servant at the time and place the servant was injured. The duty of the master to furnish a reasonably safe place to work of course applies only to the place assigned to the servant for work, and if the servant was injured or killed at a place other than the place he was assigned, such duty is not imposed upon the master. See Broadway Coal Mining Company v. Render, Ky., 119 S. W. 198; Lay's Administrator v. Harlan Producers Coal Corporation, 262 Ky. 612, 90 S. W. 2d 716, and Faulkner v. Gatliff Coal Company, 228 Ky. 379, 15 S. W. 2d 236.

It is quite evident that at the time and place the decedent met his death the appellees did not owe him any duty to make that particular place safe. They had no reason to anticipate that the deceased would wander from the place assigned to him for work and go into an abandoned place in the mine for some purpose which is not disclosed by the record.

The administrator argues that there is a duty imposed upon the appellees by KRS 352.090 and 352.340. KRS 352.090 deals solely with precautions in cases where there is inflammable gas in abandoned places in coal mines. KRS 352.340 likewise is largely devoted to the same purpose although it does require the mine foreman to examine each working place in a mine each day, or oftener, while employees are at work. It further provides that if the foreman finds any place to be in a dangerous condition he shall make it safe.

We do not think these statutes apply here, first because they relate to dangers caused by inflammable gas, and second, because there is no showing that a dangerous condition was found to exist. In any event, there

is no evidence whatever to show that the death of decedent was caused by violation of these statutes.

A verdict of the jury in this case would necessarily result solely from and rest upon surmise or speculation, and under such circumstances a submission of the case to the jury is not authorized. See Fee's Administratrix v. Mahan-Ellison Coal Corporation, 241 Ky. 231, 43 S. W. 2d 681.

The action of the trial court in peremptorily instructing the jury to find for the appellees was proper and the judgment is therefore affirmed.